## Perry Bank & Trust Company et al. v. Riggins et ux.

(Decided February 28, 1930.)

J. W. CRAFT for appellants.

JESSE MORGAN for appellees.

OPINION OF THE COURT BY JUDGE GRIGSBY—Reversing.

On November 13, 1928, appellee Dr. N. G. Riggins had on deposit in savings account in Perry Bank & Trust Company $8,310, and in addition had on deposit in his checking account sixty or seventy dollars. This savings account deposit originated in the Perry County State Bank on December 31, 1925, by a deposit of $4,000 being made. The Perry County State Bank was merged with the Perry Bank & Trust Company about May 15, 1928, and appellee Dr. N. G. Riggins continued to deposit in the Perry Bank & Trust Company until on the 13th day of November, 1928. On that day, and during banking hours, Dr. N. G. Riggins obtained a cashier's check for $8,000. This check was made payable to his wife, Mrs. N. G. Riggins. The check is in words and figures as follows:

"73-379 No. 12375—Perry Bank & Trust Co.

"Hazard, Ky., 11/13/28.

"Pay to the order of Mrs. N. G. Riggins, $8,-000.00 eight thousand and 00 cts. dollars
"Cashier's Check.
"J. I. Dempsey, Cashier."

The transaction is fully explained in the deposition of appellee Dr. N. G. Riggins in the following questions and answers:

"Q. Now if you had a transaction with the Perry Bank & Trust Company on the 13th day of November 1928 tell the court just what it was? A. I got a cashier's check of $8,000.00 from that bank which left a balance in the savings account of $310,-00 shown by the savings account book which I hold in my hand. This check was made payable to my wife, Mrs. N. G. Riggins. . . .

"Q. Now will you tell the court just what you did to obtain this check of $8,000.00 payable to your wife from the cashier? A. I took my savings account with me to the bank and told Mr. Dempsey that I wanted a cashier's check for $8,000.00 and gave him my savings account book. He took my book and in the withdrawal column put $8,000.00 and then wrote me a cashier's check for $8,000.00 and gave me the check and the bank book."

The record discloses that this cashier's check was sent to appellee Mrs. N. G. Riggins by United States mail to Knoxville, Tenn., and was on November 15, 1928, deposited to her credit in the East Tennessee National Bank. The East Tennessee National Bank in turn sent it to the National Bank of Kentucky in due course and on November 16, 1928, the National Bank of Kentucky returned it with the notation, "Bank reported closed." It appears that on November 16, 1928, the Perry Bank & Trust Company did not open for business and on that day was placed in the hands of F. L. Cisco, special banking commissioner and liquidating agent for that bank. The appellee Mrs. N. G. Riggins presented her claim properly verified to the special banking commissioner, claiming the cashier's check of $8,000 was a preferred claim. The banking commissioner rejected this preference. Suit was instituted in the Perry circuit court by appellees, Dr. N. G. Riggins and Mrs. N. G. Riggins, as plaintiffs, to recover of the defendants, Perry Bank & Trust Company and F. L. Cisco, as special banking commissioner, the sum of $8,000, with interest thereon from the 13th day of November, 1928, until paid, and it was further sought to have this sum adjudged a preferred claim against the assets. On final submission of the case the trial court sustained the plaintiffs' contention and rendered judgment in favor of plaintiffs, who are appellees here, for the sum of $8,000, with interest from the 13th day of November, 1928, until paid, and further adjudged and decreed same to be a preferred claim. From his judgment defendants appeal.

It is shown that, at the time F. L. Cisco took charge of said bank as special banking commissioner there was cash in vault $25,023.18, and also other cash items of $3,808.79, and that the other resources of the bank, including cash in vault and cash items, amounting to $1,384,-986.71. The liabilities of the bank, including capital stock and surplus, equaled the resources, and included the cashier's checks of $18,249, $8,000 of which is the cashier's check of appellees. It is claimed by appellee Dr. N. G. Riggins that the $8,000 represented by the cashier's check all or a part of it was to be used by his wife as she saw fit in buying a home in Knoxville, Tenn. However, the record does not show that the cashier, J. I. Dempsey, or any of the officials of the Perry Bank & Trust Company, was told the purpose for which the $8,-

000 was to be used. It further appears from the record that no written notice was given of the intention to withdraw this $8,000 from the savings account nor had any written notice been given the bank when previous withdrawals were made from this savings account. It is testified to by Dr. Riggins that he told Prentice Baker, who was working at the bank, that he would need probably most of the money, but does not claim that he told him the purpose for which it was to be used, and that Baker said, "O. K."

This case is well and exhaustively briefed by the attorneys for appellants and appellees respectively, yet no case exactly in point from Kentucky has been called to our attention. Also, after an exhaustive examination of the authorities by this court, independent of the briefs, we have been unable to find a Kentucky case exactly in point. The appellees earnestly insist that the case of First National Bank of Hazard v. Barger et al., 115 S. W. 726, 728 (there being no Kentucky report), is authority in this case. In the above-cited case, S. C. Colwell was indebted to the Hazard Bank in the sum of $535, and while owing this amount to the bank, he issued checks against the Hazard Bank amounting to $1,144.15. He had no money on deposit there, and on the next day went to Irvine, Ky., and there obtained a check for $1,144.15. This check was payable to himself, and was the exact amount of the total of the checks he had issued. While in Irvine, he saw C. G. Bowman, president of the Hazard Bank, gave the check to him, with direction to place it to his credit in the Hazard Bank, at the same time telling him that he had drawn some checks on the Hazard Bank and that this deposit was to meet these checks. The Hazard Bank gave Colwell credit for the $1,144.15 and charged him with the balance on their judgment, to wit, $535. After this deduction, there was not enough to pay all the checks issued against the fund of $1,144.15. In that case the court held: "The law is that, if a bank receives a general deposit from one who is indebted to it, the bank has the right to charge the depositor's account with such indebtedness; but if the bank receives a deposit with notice that it is made for the purpose of meeting outstanding checks drawn by the depositor, it has no right to charge the depositor's account with sums due it by the depositor, and thus defeat the persons holding the outstanding claims from collecting their checks. This rule applies only when the bank has notice of the

previous appropriation of the sum deposited, or, in other words, that it is a special deposit to meet outstanding checks issued by the depositor.''

It will be observed that in the Hazard Bank case the bank had notice of the purpose for which this deposit was made, that the deposit of the check increased the assets of the Hazard Bank to the amount of $1,144.15, and that the Hazard Bank, through its president, received this deposit with the knowledge that it was to be used for a specific purpose; that is, to pay the outstanding checks recently given. It will be further noted that the question in that case was between the bank who held the judgment and the holders of this specific check, and was not a question of preference between the creditors of the bank. While in the instant case the Perry Bank & Trust Company, while it knew that the cashier's check was issued, yet it was not notified of any specific purpose for which this fund was to be used.

Appellees also rely on Farmers' Bank of White Plains et al. v. Bailey et al., 221 Ky. 55, 297 S. W. 938. In that case W. N. Bailey et al. were the owners of bonds in varying amounts aggregating about $19,500, which they deposited with the bank for safe-keeping. When the bonds were deposited, the bank delivered to each of the owners a certificate reciting that the bond or bonds would be returned to the depositors on the surrender of the certificate properly indorsed. The bank, without authority from any of the owners, sold the bonds and placed the proceeds in the fund known as the ''emergency fund.'' However, the proceeds were not kept separate from the other funds of the bank. In that case the court held that, inasmuch as the particular bonds were to be returned to the owners, this was a special deposit and that the relation between the bank and each of the bondholders was that of the bailee and bailor and not that of debtor and creditor; hence, when the bank fraudulently sold the bonds and converted the proceeds to its own use, a constructive trust in favor of the bondholders was created. The facts in the Bailey case were so disimilar to the facts in the case under consideration that it has no application. Appellee also quotes and relies on a number of authorities outside of Kentucky, none of which in our opinion are applicable to or controlling in the instant case.

The attorney for appellee insists with a great deal of earnestness that the case of the Good Year Tire &

Rubber Company v. Hanover State Bank et al., decided by the Supreme Court of Kansas, November 12, 1921, and reported in 109 Kan. 772, 204 P. 992, 21 A. L. R. 677, is an authority in the instant case. In that case the Good Year Tire & Rubber Company held a trade acceptance, in effect a draft, for $1,364.50 on Poell Bros. of Hanover, Kan., which was sent for collection to the Hanover State Bank of that place. On May 13, 1920, the bank presented the draft to Poell Bros., who gave in exchange for it their check upon the bank where they carried a checking account sufficient to meet it; the bank having more than enough cash on hand for the purpose. The check was at once charged to the account of Poell Bros., and the bank mailed its cashier's check for the amount to a bank in Chicago through which the collection had been received. On May 17, 1920, and before the cashier's check in the usual course of business had been presented to the Hanover bank for payment, that bank was closed, being taken charge of by a deputy banking commissioner. The rubber company claimed a preference over general creditors on the theory that the amount was held as a trust fund. The Supreme Court of Kansas upheld that contention. A careful reading of the Good Year Tire & Rubber Company case convinces us that the relation of principal and agent existed in that case because the draft had been sent to the Hanover Bank for collection, had been collected, and the cashier's check was in payment of collections made by it. The Supreme Court of Kansas in the case of Griffith v. Burlington State Bank et al., 277 P. 42, 43, decided May 4, 1929, in speaking of the Good Year case says: "The principal and agent doctrine was accepted by all the members of the court in the Kesl case (109 Kan. 776, 204 P. 994) and in the companion case of Tire & Rubber Co. v. Bank, 109 Kan. 772, 204, P. 992, 21 A. L. R. 677. . . . The subject of principal and agent was not discussed in the opinion in the Tire & Rubber Company case, because there was no dispute about it."

We are of the opinion that, while the Good Year case, supra, is not without instructive significance, yet in our opinion the distinction is clear. Appellee insists that, inasmuch as the Perry Bank & Trust Company had in its vaults more than a sufficient amount in cash to meet the cashier's check of $8,000, the trust doctrine applies, and that it was entitled to a preference. Under the authorities hereafter quoted, we cannot concur in the con-

tention that appellee is entitled to a preference under the trust doctrine, special deposit doctrine, or any other doctrine.

In the case of Keene v. Collier, 58 Ky. (1 Metc.) 415, decided by this court at the winter term 1858, this court says: "Deposits of money with banking corporations, or with bankers, are either general or special. A special deposit is where the specific money, the very silver or gold coin, or bills deposited, are to be restored, and not an equivalent. A general deposit is said to amount to a mere loan, and the bank is to restore, not the same money, but an equivalent sum, whenever it is demanded."

The Negotiable Instruments Law, which is section 3720b-189, Kentucky Statutes, reads as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

5 R. C. L. p. 483, in discussing cashier's checks, uses this language: "The bank, in such case, is the debtor and its obligation to pay the cashier's check is like that of the maker of any other negotiable instrument payable on demand. When such a check is given to a depositor, to cover the amount of the withdrawal, it is merely an acknowledgment of an indebtedness on the part of the bank and the payee of the order. The change thereby made is not in the nature of a debt, but in the evidence of it. Hence such a check is held not to be an assignment to the depositor of the amount therein specified, as against the receiver taking possession of the property of the bank, by order of court, before the check is presented to it for payment."

See, also, Clark v. Chicago Title & Trust Co., 186 Ill. 440, 57 N. E. 1061, 53 L. R. A. 232, 78 Am. St. Rep. 294.

Morse on Banks and Banking (1928 Edition) p. 1134, says: "In case a bank on which a check is drawn becomes insolvent before the check is paid, of course the check holder cannot expect a preference to the other creditors of the bank; in no reasonable view can the holder acquire more rights than a depositor would have himself."

Numerous authorities are cited by the author in support of this doctrine, among others being the case of Massey-Harris Harvester Co., Inc., v. First State Bank of Cunningham et al., decided by the Supreme Court of

Kansas January, 8, 1927, reported 122 Kan. 483, 252 P. 247, 248. The Harvester Company of Kansas City sent a note to the Bank of Cunningham for collection; the bank collected $3,184. On August 21, 1925, a representative of the Harvester Company called at the bank for the collection. The banker asked him how he wanted the remittance, and he answered that he would take a cashier's check. A cashier's check for $3,180 was given him; $4 being held as a charge for collection. The bank at that time had more than the amount of cash on hand. The Harvester Company sent the cashier's check to its office in Kansas City, where it was deposited for collection, and in the usual course of business reached the Cunningham Bank on August 29th. On that day the bank sent to the forwarder of the check a draft drawn by it on the Federal Trust Company of Kansas City for $8,062.-28, which included the amount of the cashier's check. This draft was presented to the drawee on August 21st; payment being refused. On September 8th, the Harvester Company was notified that the check had been charged back to its account. The last day on which the Cunningham Bank was open for business was on September 5th, the 6th was on Sunday, and the 7th Labor Day. The banking commissioner took charge on the 8th. The Supreme Court of Kansas, in affirming a decision denying a preference to the holder of a cashier's check, said: "We think the plaintiff was entitled to no preference over general creditors of the bank. After the bank had made the collection of the note, we may assume the relation between the plaintiff and it was that of principal and agent and not creditor and debtor, and that, if the bank had been closed while that condition existed, the plaintiff would have been entitled to reclaim the money as its own. But when the plaintiff by its representative, having the opportunity to receive in cash the proceeds of the note chose to accept a cashier's check— doubtless for convenience in transmission—it voluntarily placed itself in the attitude of an ordinary depositor." In support of that opinion are cited State Bank v. State Bank, 114 Kan. 463, 218 P. 1000; Clark v. Bank, 72 Kan. 1, 82 P. 582, 2 L. R. A. (N. S.) 83, 115 Am. St. Rep. 173.

In case of Amos, Comptroller, et al. v. Baird et al., decided by the Supreme Court of Florida, Division B, 96 Fla. 181, 117 So. 789, 790, on July 11, 1928, the claim of Martin Valaer is based on the following facts as it appears in the opinion: On the 16th day of July, 1926,

Valaer went to the Bank of Moorehaven to buy a draft to pay for a piece of land and other indebtedness owing by him to Mrs. J. A. Johnson. The Moorehaven Bank issued him a draft for $900, drawn on the Bank of America of New York City. The draft was sent to Mrs. Johnson and in due course presented to the Bank of America, but it was not paid, for the reason that, after the purchase of the draft, the Bank of Moorehaven was closed by order of the state comptroller. The court, in deciding that case, stated: "Therefore it is evident that Martin Valaer simply as a matter of convenience purchased from the bank a draft, payable to Mrs. J. A. Johnson, in the sum of $900. The money which Valaer paid to the bank immediately and properly went into the general assets of the bank and the draft issued therefor became a common liability of the bank. . . . If Valaer had delivered the money to the bank, instructing the bank to deliver that money to some other bank for the credit of Mrs. Johnson, and the bank had accepted that money under such instructions, then the money would have become a special or specified deposit and the property therein would have remained in Valaer until it was delivered as directed. City of Miami v. Shutts, 59 Fla. 462, 51 So. 929. But Valaer chose to exchange his money for the paper which amounted to the evidence of indebtedness of the bank. We must hold, therefore, that the decree is erroneous in so far as it allows the claim of Martin Valaer as a preferred claim, and to this extent it must be reversed."

In the case of Clark v. Chicago Title & Trust Company, receiver of Globe Savings Bank, 186 Ill. 440, 57 N. E. 1061, 1062, 53 L. R. A. 232, 78 Am. St. Rep. 294, the court said: "We concur in the views of the appellate court in the opinion by Mr. Justice Freeman (85 Ill. App. 293), where it is said: 'The drawing of the cashier's check, even if it changed the form of indebtedness, did not change the fact. The Globe Savings Bank was still indebted to the appellant for the $3,000 represented by its cashier's check. There was no change in the nature of the debt. The only change was in the evidence of it. . . . Appellant's counsel insist that "it is not a question of preference; it is a question of title to money—to whom does it belong?" A creditor is entitled to money due him from any debtor. In a sense, the money due belongs to him; but that fact does not change—it establishes—the relation of debtor and creditor, and subjects

the parties to the rules of law governing that relation. . . . The check was equivalent to an acknowledgment of indebtedness. The payee was entitled to the money before the check was drawn, and he or the holder of the check was entitled to it afterwards, in the same manner and to the same extent.' "

The court affirmed the decision, holding that the cashier's check was not a preference.

In the instant case the record shows that among other liabilities of the Perry Bank & Trust Company were certificates of deposits of $445,365.22; savings deposits, $138,496.32; individual deposits, $538,891.71; Christmas savings, $1,041,83. It is difficult for us to understand why the holder of a cashier's check, under the facts as shown in this case, should have a preference over the holders of certificates of deposit or individual deposits or savings accounts deposits or other general creditors. In our opinion, the relation of debtor and creditor exists in the one case just as in the other. We discern no facts or special circumstances in this case which would create a trust fund or special deposit in appellant's hands for the benefit of appellees, and it must be held that the trial court did err when it held appellees entitled to the privilege of a preferred creditor.

It is therefore ordered that the judgment be reversed, and the trial court is directed to set aside the judgment herein in so far as it adjudged appellees a preference.