POWELL BUILDING & LOAN ASSOCIATION, APPELLANT, *v.* LARABIE BROTHERS BANKERS, INC., ET AL., RESPONDENTS.

(No. 7,387.)
(Submitted May 4, 1935. Decided June 17, 1935.)
[46 Pac. (2d) 697.]

.

184

*Mr. S. P. Wilson,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John G. Brown,* and *Mr. L. V. Ketter,* for Respondent, submitted a brief; *Mr. Brown* argued the cause orally.

190

MR. JUSTICE MORRIS delivered the opinion of the court.

In this action the plaintiff seeks to impress a trust upon certain assets in the hands of the superintendent of banks of the state of Montana; such assets coming into the hands of the superintendent by reason of the insolvency of Larabie Brothers Bankers, Incorporated, of the city of Deer Lodge, Montana. At

the time the facts involved here arose there were but two banks in that city, Larabie Brothers Bankers and the Deer Lodge Trust & Savings Bank. For the sake of brevity these institutions will hereafter be referred to as Larabie Brothers and Deer Lodge Trust.

It appears from the record that the plaintiff held a mortgage on the property of the Odd Fellows Lodge of Deer Lodge, and the officials of the lodge had arranged with Alice Swander to make a new loan on the lodge property for the purpose of taking up and discharging the mortgage held by the plaintiff. March 1, 1933, Alice Swander withdrew from her postal savings account at the postoffice in Deer Lodge $2,500 in currency for the purpose of using that as a part of the money to take up the mortgage. Acting on the suggestion of her attorney that, pending the consummation of the mortgage deal, it was not advisable to carry the currency on her person, she called at the office of Larabie Brothers where she kept a savings account, and contacted Mr. K. W. Haviland, the assistant cashier of Larabie Brothers. At her request Mr. Haviland prepared a ''withdrawal slip'' for $325 against her savings account in that bank. With the $2,500 in currency and the withdrawal slip she obtained a cashier's check issued by Larabie Brothers for $2,825 payable to herself or order. In the early afternoon of March 1, accompanied by her attorney, Senator Paul, and a ''Mr. Midtlying,'' she went to the courthouse in Deer Lodge and by appointment met Mr. S. P. Swenson, secretary and treasurer of the plaintiff, and the four proceeded to the office of the clerk and recorder, where Mr. Swenson satisfied the plaintiff's mortgage against the Odd Fellows Lodge property on the records of Powell county, and thereupon Alice Swander indorsed the cashier's check, making it payable to the Powell Building & Loan Association or order, and delivered the same to Mr. Swenson, the secretary and treasurer of the plaintiff. Mr. Swenson testifies that on leaving the courthouse he returned to his office, passing down the street on which the office of Larabie Brothers was located and on to his office in the Deer Lodge Hotel, where he indorsed the cashier's check and took it along with some other

items to the Deer Lodge Trust, where he deposited it "within an hour." The deposit slip introduced in evidence was dated March 1, 1933, but the books of the Deer Lodge Trust showing the account of the plaintiff listed this deposit as having been made on March 2. The transaction at the courthouse referred to, at which Mr. Swenson received the cashier's check for the plaintiff, took place about 1:30 P. M. on March 1, and, as stated, Mr. Swenson went down the street, past the Larabie Brothers banking office, some time between 1:30 and 2:30 o'clock P. M., having in his possession the cashier's check. The banking hours of the banks in Deer Lodge were from 10 A. M. to 3 P. M., so obviously, when Mr. Swenson passed down the street, Larabie Brothers was open for business. The office of the plaintiff was about half a block on the opposite side of the street from Larabie Brothers farther down the street from the courthouse than the office of Larabie Brothers. The office of the Deer Lodge Trust where the plaintiff deposited the check was about a block and a half still farther down the street from plaintiff's office, and in going there to make the deposit Swenson had to go about two blocks farther from the courthouse, where he received the check, to come to the Deer Lodge Trust than he would have to go if he had gone directly to Larabie Brothers banking office. The Deer Lodge Trust, according to the practice prevailing between the banks, cleared the cashier's check at 11 o'clock A. M. March 2, 1933, with Larabie Brothers. In the clearings between the two banks on March 2 the Deer Lodge Trust cleared checks against Larabie Brothers for $4,834.03, and Larabie Brothers cleared checks against the Deer Lodge Trust for $324.04. In the settlement of the clearings on that date, Larabie Brothers gave the Deer Lodge Trust a draft for $4,509.99 on the First National Bank & Trust Company of Helena, which appears to have been the correspondent of both of the Deer Lodge banks. On March 2, 1933, the Deer Lodge Trust sent a remittance of several thousand dollars, which included the cashier's check of $2,825, to the Helena bank for the credit of the Deer Lodge Trust. That remittance reached the Helena bank on March 3, 1933, but for some reason not shown by the record it was not

credited to the account of the Deer Lodge Trust on that date. March 4, 1933, the President of the United States declared the "Bank Holiday," and Larabie Brothers thereafter failed to reopen for business, and on March 14, 1933, was taken in charge by the superintendent of banks of the state of Montana for liquidation. The draft of $4,509.99 which was received by the Deer Lodge Trust from Larabie Brothers on March 2 in the clearings of that date between the two was returned to the Deer Lodge Trust by the Helena bank, and the amount of the cashier's check the plaintiff had deposited at the Deer Lodge Trust on March 2 was charged back to the plaintiff by that bank.

The assets of Larabie Brothers having passed into the hands of the superintendent of banks, the plaintiff, on October 31, 1933, filed its claim with the superintendent for $2,825 as a preferred claim. November 28 the superintendent wrote the plaintiff by registered mail as follows: "Powell Building and Loan Association, Deer Lodge, Montana: Gentlemen, you are hereby notified that claim in the sum of $2,825 filed by you against Larabie Brothers Bankers, Incorporated, Deer Lodge, is rejected. Yours very truly, Frank H. Johnson, superintendent of banks, by liquidating agent." December 12, 1933, the plaintiff began this action to recover on its claim as a preferred claim. January 6, 1934, the Deer Lodge Trust paid to the plaintiff $179.27 on account of the plaintiff's proportion of the $324.04 which the Deer Lodge Trust received from Larabie Brothers as an offset in the clearings of March 2, 1933. When the action was heard in the district court, plaintiff's claim for preference was denied, but its claim was allowed as a general claim for $2,645.73, which is the balance due on the principal sum of the cashier's check after deducting the $179.27 paid to plaintiff by the Deer Lodge Trust as mentioned above, and the defendant was awarded costs. From that judgment plaintiff appeals.

Plaintiff assigns twelve alleged errors by the trial court. The merits of its claim of preference will turn upon the relation that arose between Alice Swander and Larabie Brothers when the former bought the cashier's check from the latter on March 1. If the money paid the bank for the check was a "special

deposit," the claim of preference must be allowed. If it was a general deposit or the transaction gave rise to the relation of debtor and creditor, the preference must be denied.

It is well settled in this state that, for one to establish a preference in a claim of the nature of that involved here, he must establish three coexistent conditions, as follows: (a) That the transaction created the relation of principal and agent, not creditor and debtor; (b) that by the transaction the assets of the bank were augmented; (c) ability to trace the trust fund into the possession of the bank. (*California Packing Corp.* v. *McClintock*, 75 Mont. 72, 241 Pac. 1077; *McDonald* v. *American Bank & Trust Co.*, 79 Mont. 233, 255 Pac. 733; *Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, 80 Mont. 174, 259 Pac. 1060, 1061.)

That the transaction between Alice Swander and Larabie Brothers augmented the assets of the latter, and that they were traced into the possession of that institution, there is no question, and consideration of conditions (b) and (c) is unnecessary here.

A cashier's check is a bill of exchange by a bank drawn on itself. There is no legal difference between a cashier's check and a bank draft. (*Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, supra.) When one purchases a cashier's check, "the transaction is that of purchase and sale. No trust relationship is established. * * * The relation between the bank and the holder of a check issued by it is that of debtor and creditor." (*Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, supra; *Standard Oil Co.* v. *Veigel*, 174 Minn. 500, 219 N. W. 863; *Perry Bank & Trust Co.* v. *Riggins*, 233 Ky. 257, 25 S. W. (2d) 386; note, 73 A. L. R. 66, and cases cited.) The general rule is that the issuance of a cashier's check does not itself constitute the creation of a trust in favor of the holder of the check, but such check is merely an evidence of indebtedness on the part of the issuing bank. (Note, 73 A. L. R. 66, and cases cited; *Charleroi Supply Co.* v. *Kelly*, (D. C.) 40 Fed. (2d) 297; *Amos* v. *Baird*, 96 Fla. 181, 117 So. 789; *Clark* v. *Chicago Title & Trust Co.*, 186 Ill. 440, 57 N. E. 1061, 78 Am. St. Rep.

294, 53 L. R. A. 232; *Louisville & Nashville R. R. Co.* v. *Federal Reserve Bank*, 157 Tenn. 497, 10 S. W. (2d) 683, 61 A. L. R. 954; sec. 8534, Rev. Codes 1921; *Stankey* v. *Citizens' Nat. Bank*, 64 Mont. 309, 209 Pac. 1054.)

In determining whether a trust relation arises in a transaction such as that involved here, the intention of the parties must be taken into account. (Brady on Bank Deposits, p. 6; *Walker Co.* v. *Alden*, (D. C.) 6 Fed. Supp. 262; *Keyes* v. *Paducah & I. Ry. Co.*, (C. C. A.) 61 Fed. (2d) 611, 86 A. L. R. 203.) The presumption is that money received by a bank is to be received and used in the ordinary banking sense, and no preference should be allowed unless facts force a different conclusion. (*Walker Co.* v. *Alden*, supra; *Bank of America, etc.*, v. *California Savings & Commercial Bank*, 218 Cal. 261, 22 Pac. (2d) 704; *Lummus Cotton Gin Co.* v. *Walker*, 195 Ala. 552, 70 So. 754; *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 160 Atl. 60, 81 A. L. R. 1488; *Miller* v. *Norton & Smith*, 114 Va. 609, 77 S. E. 452.) If it is agreed and understood that a bank may use a deposit as it uses its general deposits, then a deposit is general, no matter what the relation between the depositor and other parties may be. (*Keyes* v. *Paducah & I. Ry. Co.*, supra.) In the last-mentioned case the railway company sought to enjoin the collection of taxes which it alleged had been illegally levied. The court, instead of requiring a bond, required the defendant to deposit $8,000 in the National Bank of Kentucky pending conclusion of the litigation. The deposit was made on the order of the court, and a copy of such order was attached to the deposit slip when the money was deposited in the bank, and the bank accepted the deposit fully understanding the situation and with full knowledge that the money was *in custodia legis*. On the failure of the bank, a claim for preference was made, which was denied, and the action in that case followed. The court held that no preference arose, that the money was received by the bank in the ordinary business of banking, and, regardless of the fact that the bank knew that the deposit was made on the order of the court, it was nevertheless a general and not a special deposit, and no right of preference

could arise. In the case at bar there is nothing whatever in the record to show that Larabie Brothers had any knowledge that the cashier's check was purchased for any specific purpose.

Cashier's checks are often purchased from a bank to transfer funds from one point to another in payment of bills or obligations. They are frequently taken out by parties who desire to have the money represented by the check in that form rather than to carry cash, and for various other purposes, and the great preponderance of authority in other jurisdictions as well as in this state is that, unless there are some special arrangements by which the bank is charged with the obligations of a trust, money paid to a bank for a cashier's check is an ordinary transaction and gives rise to the relation of debtor and creditor, and has nothing to do with trust relations. Unless there are special arrangements agreed upon between the parties at the time the deposit is made that the money is a special deposit, the relation between the depositor and the bank will be that of debtor and creditor and not trustee and beneficiary. In the absence of fraud, we know of no exceptions to this rule.

Alice Swander testified that she told Mr. Haviland nothing about what she intended to do with the cashier's check. It was payable to her own order, and there was no suggestion that there was a trust matter connected with the purchase of the check. Mr. Haviland testified that he was the only person in the employ of Larabie Brothers that contacted Alice Swander when she bought the cashier's check, and that he knew nothing about what she contemplated doing with the check, and she gave him no information whatever about that phase of the matter. Clearly there was no trust relation arising between the parties by any understanding between them when the cashier's check was purchased, and no charge of fraud is involved to support the relation of trustee and *cestui que trust* by implication.

Facts necessary to create a trust relation were more favorable to the holder of such paper in the case of *Montana-Wyoming Assn.* v. *Commercial National Bank,* supra, and preference was denied in that case. If no trust relation arose between Alice

Swander and Larabie Brothers, none could exist in favor of Alice Swander's indorsee.

While we are satisfied with the conclusion reached on this phase of the action, we think it well to comment on some cases cited by plaintiff and some errors assigned on other points, and will then take up the question of costs. We think counsel for the plaintiff misconstrues section 89 of Chapter 89 of the Laws of 1927, as applying to a case such as the one at bar. Counsel refers to the above section in comparing it with a similar Florida statute, and which was construed in a manner counsel regards as favorable to his contentions on the question of a trust relation existing between Alice Swander and the defendant bank. We have always assumed that such statutes were enacted to provide rules for the exchange of, or the collection of, commercial paper by one bank from another located in different cities and towns, and not to transactions between banks in the same city or town. Legislatures endeavor to make adequate provision to keep commercial paper liquid as it passes through banking channels, to facilitate collection and minimize the expense, and the rules provided for this purpose through use of the mails do not by any means always apply where one bank in the same town with another makes a collection from the other or takes a draft to settle the balance of clearings in its favor. When the holder of commercial paper can conveniently present the same at the bank's window for payment, it is the holder's right and option to demand payment in cash. Particularly is this true where the holder resides in the town where the paying bank is located, and, if he accepts anything else, he does so at his own risk. Most of the cases cited by plaintiff involve actions that arose from transactions between litigants where collections were made through the mails, and not over the counter of the paying bank. Counsel cites the case of *Bank of Republic* v. *Republic State Bank*, 328 Mo. 848, 42 S. W. (2d) 27. In that case one bank issued its draft to another in the same town in settlement of the daily clearings between the two. Before the draft could be presented to the drawee bank and paid, the issuing bank suspended. The holder of the draft was held to be a preferred creditor. We

do not agree with the reasoning in that case and others of the same court on similar questions, for the following reasons: (a) The collecting bank in the same town had a right to demand cash over the counter, but accepted a draft instead, and did so at its own risk, or, if authorized, at the risk of the bank or owner from which it received the checks surrendered to the issuing bank in the clearings (3 R. C. L. 616) ; (b) the decision runs counter to the rule established in this state that one who purchases a draft from a bank becomes the creditor of the bank and no trust relation arises (*Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, supra) ; (c) by exempting a bank from the above rule, it discriminates against others in like circumstances. It seems to us this opinion is illogical on its face. The court sets out the established rule in one part of the opinion that in the absence of fraud, when one purchases a check or draft at a bank, it is simply a transaction of purchase and sale resulting in the relation of debtor and creditor, and no preference can arise. Doubt is expressed about the fairness of classifying the purchaser of a draft or check as a general creditor in one instance and classifying one who holds a draft issued in the settlement of clearings in another, making the latter a preferred creditor and the former a general creditor, but justifies such ruling on the ground of the necessity of keeping the circulation of commercial paper free from burdensome restrictions. To say that the two parties who may enter the bank together, one to receive a draft to balance the clearings against the issuing bank, and the other to purchase a draft for which he pays money over the counter, shall be governed by different rules of law, does not comport with our notion of the "equal protection of the law." In the *Bank of Republic Case* the facts are similar to those in the case at bar only to the extent that that case, as the one here, arose between banks located in the same town. The facts leading up to the issuance of the draft in the two cases are otherwise quite different. In the *Bank of Republic Case* the payee bank received the draft in settlement of clearings which it had received through the mails from another bank, and the payee bank, so the court there held, was the agent of the other out-of-town bank.

If, which is the general rule, the out-of-town bank had sent the paper direct to the issuing bank, no question could have arisen about the relation being that of principal and agent, and the holder of the draft in case of insolvency of the issuing bank would have been entitled to preference. From this premise the Missouri court reasoned that it made no difference in such relation whether the paper was presented through the mails or through an agent located in the same town as the issuing bank. While such reasoning may appear logical on its face, it does not take into account the fact that the preponderance of authority is that a different rule applies between parties who are dealing through the mails and parties who have an opportunity to present their checks and drafts at the teller's window of the paying bank and demand cash or accept exchange at the option of the holder.

In the case of *Dakin* v. *Bayly*, 290 U. S. 143, 54 Sup. Ct. 113, 78 L. Ed. 229, 90 A. L. R. 999, cited by plaintiff, the holder of a draft of the insolvent bank was given a preference, but the draft came to the holder in settlement of collections through the mails, and it is clearly a case of principal and agent and not applicable here.

We think the facts in the instant case clearly show that it was the intention of the plaintiff and the intention of plaintiff's agent, the Deer Lodge Trust, to assume the risks attendant upon the usual bank practices when they refrained from demanding cash in payment of the check. This is made evident by the fact that Swenson elected to deposit the check in plaintiff's own bank instead of demanding the cash over the counter of Larabie Brothers' office, and, when the check came into the hands of the Deer Lodge Trust, it likewise elected to accept a draft instead of demanding cash in the clearings. Even if it could be said that any trust relation obtained between Alice Swander and Larabie Brothers, the benefits of any such trust were waived when first Swenson and then plaintiff's agent waived the right to demand the trust funds alleged to be held by Larabie Brothers.

200 

In plaintiff's assignment of error No. 3 is involved the denial of plaintiff's claim both as a preferred and as a general claim. The court allowed the claim as a general claim, and this assignment has no merit except as it relates to the question of costs which will be taken up presently.

The fourth assignment is to the effect that the court erred in finding that by reason of the claim "not showing a credit of $179.29 the superintendent of banks was warranted in rejecting the whole claim in order to compel this action to determine the true basis of the indebtedness of Larabie Brothers and Company in this matter." The record shows that plaintiff's claim was filed October 31, 1933. The claim was rejected as hereinbefore stated, and thereafter the plaintiff filed its complaint in this action December 12, 1933. The credit of $179.29 was not paid by the Deer Lodge Trust to the plaintiff until January 6, 1934, several weeks after plaintiff's claim was filed and after it had begun this action. Obviously the credit of $179.29 could not be taken into account in any action or transaction taken in the matter before the credit was received. Plaintiff could probably have avoided any controversy on this phase of the matter if it had amended its complaint when the action came on for hearing, but we do not think the plaintiff is otherwise blamable in that matter.

Assignment No. 11 relates to an alleged error of the court in awarding defendants costs. It will be noted by the letter of the superintendent of banks, in reply to plaintiff when its claim was filed as a preferred claim, that the letter simply states that the claim was rejected. It makes no reference to the claim being a preferred claim. In defendants' answer certain things are admitted, and it then says, "except it is denied that plaintiff's claim was denied. It was only as a preferred or preference claim that it was denied."

It is the general rule in all jurisdictions that we know anything about that, if a defendant admits that plaintiff's claim, if it calls for money, is just and that plaintiff is entitled to a certain amount, and defendant pays that amount into court, then, if the action proceeds and plaintiff gets no more than de-

fendant paid into court, or if he gets less, defendant is then entitled to costs; and, in matters where money is not directly involved, if the defendant is willing that plaintiff shall have judgment and makes that admission in court or in writing filed with the clerk, the same rule would apply as is heretofore stated in regard to an action where money only is involved; but in the matter at bar plaintiff's claim was rejected outright without any reference as to whether it was a preferred or general claim, and naturally plaintiff was confronted with the question as to whether the superintendent of banks would construe that as an absolute rejection or merely as a rejection of the claim as a preferred claim.

The statute provides no particular form of claim. Section 131 of Chapter 89, Laws of 1927, usually referred to as the "Banking Act," provides in substance that claims against an insolvent bank shall be made and sworn to on forms prepared by the superintendent of banks. Section 132 provides: "The superintendent shall reject or allow all claims in the whole or in part, and on each claim allowed shall designate the order of its priority." Section 134 provides for the method of determining priority. It would appear from these sections that any claim might be presented to the superintendent of banks and be entitled to be allowed, regardless of whether it specified on its face that it was a preferred or a general claim, so long as the superintendent of banks was advised as to what class of claim the claimant intended to make.

It was held in the recent case of *State ex rel. Clark* v. *Bailey,* 99 Mont. 484, 44 Pac. (2d) 740, that, if a claim was rejected as a preferred claim, it was entitled to be approved as a general claim, if otherwise correct and valid. It was held by this court in the case of *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114, where there were not sufficient funds in the bank to pay a preferred claim, that the claimant was entitled to what funds were in the bank, and that as to the balance of his claim it should be allowed as a general claim. From these decisions of our court and the statutes as we construe them, the plaintiff in the instant case was entitled to have its claim approved as a

general claim in the form presented, even though rejected as a preferred claim; and we think that the superintendent of banks when he wrote plaintiff rejecting its claim should have stated that the claim was rejected as a preferred claim but allowed as a general claim; otherwise plaintiff would not understand whether he had a claim of any kind that had been approved by the superintendent of banks. If the defendant superintendent, when the matter came on for hearing, had stated in open court that the claim was rejected as a preferred claim, but would be allowed as a general claim, we think that would have entitled the defendants to have their costs; but, when that was not done, we think the award of costs to the defendants in the action was error.

Having decided that plaintiff's claim was properly rejected as a preferred claim, the judgment must be affirmed, except as to the matter of costs.

The cause is remanded, with instructions to the district court to modify the judgment awarding costs to the plaintiff instead of the defendants, and, as so modified, the judgment will stand affirmed. Each party will pay its own costs on this appeal.

Associate Justices Matthews and Anderson concur.

Mr. Chief Justice Sands, being absent on account of illness, takes no part in the above decision.

Mr. Justice Stewart, Concurring Specially: I concur in the result. The transaction between Larabie Brothers Bankers and Alice Swander was merely an ordinary banking transaction whereby the customer bought a cashier's check, a negotiable instrument, which the bank was obliged to pay upon presentation. There is nothing in the record to distinguish this from any other routine business transaction. When Deer Lodge Trust & Savings Bank personally presented the cashier's check to Larabie Brothers Bank, upon which it was drawn, it had a right and it was its duty to demand and receive payment in legal tender currency, or money. When it accepted anything other than that, it did so on its own risk. When it accepted a draft, it took the

chance of that draft being good. When the draft proved to be bad, it could not fall back upon its own customer, the depositor. When the draft was accepted as payment of the cashier's check, the matter was a closed transaction as far as the customer, the Powell Building & Loan Association, was concerned. It was not interested in that draft. The case is distinguishable on the facts from cases wherein items are sent by mail to out-of-town drawee banks and drafts sent in payment thereof. In such cases the matter is not considered cleared through until all drafts have been paid. Such is not the rule of law applicable here.