CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAIL-ROAD CO., RESPONDENT, v. LARABIE BROTHERS BANKERS, INC., ET AL., APPELLANTS.

(No. 7,550.)

(Submitted September 25, 1936. Decided October 13, 1936.)

[61 Pac. (2d) 823.]

128

*Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* submitted a brief; *Mr. Ford* argued the cause orally.

130

*Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. Harry C. Pauly,* of Counsel, argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Powell county. Larabie Brothers Bankers, Inc., a Montana corporation, was engaged in the general banking business in the city of Deer Lodge for many years immediately preceding March 4, 1933. On that date it closed its doors and has since been in liquidation through the state banking department under the jurisdiction of the superintendent of banks. When the bank closed, plaintiff Chicago, Milwaukee, St. Paul & Pacific Railroad Company, had on deposit therein the sum of $6,875.25. It presented its claim in due form, asserting that the account was a special deposit, and that it was therefore entitled to preference. The claim was disallowed as a preferred claim but was allowed as a general claim. Thereupon plaintiff instituted this action by filing a complaint against the bank and the superintendent of banks as ex officio liquidating officer thereof.

In the complaint it was alleged that on or about February 28, 1933, the railroad company transmitted to the bank as a special deposit for use in the payment of railroad paymaster checks and for no other purpose the sum of $9,000; that this remittance was received by the bank on or about March 2, 1933, and credited as a special deposit for the payment of paymaster's checks, and that the money was not transmitted or received as a general deposit, but became a trust fund, and

that no relation of debtor and creditor was created or intended. It was further alleged that the assets of the bank were augmented at the time of the remittance to the extent of $9,000, and that at the time of closing the bank's assets were still augmented to the extent of $6,875.25, the balance of the amount not then paid out; that funds in the hands of the bank at the time of its closing were in excess of the amount claimed as a trust fund, and that the plaintiff was entitled to a preference claim in that amount.

Defendants answered, denying that the deposit was a special deposit or that it was intended as a trust fund for a specific purpose. They specifically alleged that the deposit was a general deposit creating the relation of debtor and creditor only. The affirmative allegations of the answer were put in issue by a reply.

The cause was heard by the court sitting without a jury. After hearing, the court made and filed findings of fact and conclusions of law in favor of plaintiff, and judgment was entered allowing a preference claim. From that judgment defendants have appealed.

It appears that plaintiff has for many years maintained railroad shops at Deer Lodge and employs many men therein. Such employees are paid semi-monthly by means of "paymaster's checks." This "paymaster's check" is a draft drawn by a paymaster on the treasurer of the company and is payable on its face at the Continental Illinois Bank & Trust Company, in Chicago, or, if so desired by the employee, it is also payable at any one of fourteen other metropolitan banks named on the reverse side thereof. Such checks or drafts were not made payable at the defendant bank, nor at any bank in Deer Lodge. For the convenience of its employees in and around Deer Lodge, plaintiff periodically transmitted funds to defendant bank in such amount as was deemed sufficient to take up all the pay checks issued to employees at Deer Lodge. It was the practice of plaintiff to forward such funds to the bank at about the time the pay checks were issued to employees. Pursuant to this custom

plaintiff on February 28, 1933, forwarded to the bank its treasurer's check for the sum of $9,000, drawn on the Metals Bank & Trust Company of Butte. This check was accompanied by a letter designating it as "a special deposit for use in payment of this company's paymaster's checks." The bank acknowledged receipt thereof by letter dated March 2, 1933, wherein it was stated that "we have credited this amount as a special deposit for the payment of the railroad's paymaster's checks." On March 4 the bank closed its doors and has since been in liquidation. At that time plaintiff's deposit had been reduced in part, leaving a balance of $6,875.25. It appears that all previous deposits had been accompanied by letters identical with the letter of February 28, 1933, and that in each instance a receipt was forwarded by the bank in terms identical with the bank's letter of March 2, 1933. The deposit in question was used solely for the purpose of paying paymaster's checks and "time drafts" which, like the paymaster's checks, were drafts drawn upon plaintiff and payable at metropolitan banks, but not at the defendant bank. Plaintiff never drew any checks upon the account. The canceled paymaster's checks were not sent through a clearing-house and returned to the railroad in the customary channels of banking transactions, as in the case of ordinary checks; instead the canceled paymaster's checks were assembled and returned by the bank directly to the treasurer of plaintiff company by express.

Defendants adduced evidence to the effect that this account was in fact handled by the bank as a general account, and that the bank statements periodically rendered to the plaintiff were the same in form as those regularly used for general accounts. Plaintiff, however, introduced evidence to show that it had no knowledge of the manner in which the bank elected to handle this deposit, and that there was nothing in the bank statements rendered which would indicate that the account was handled in any manner other than as a special deposit. It was also shown that the account was from time to time, and for short periods, overdrawn, but that plaintiff had no knowledge of such fact and never authorized any

overdraft. In this connection it also appears that in each instance when an overdraft occurred, it was usually covered in the course of a day or two by one of the treasurer's checks sent out (semi-monthly) by plaintiff. Evidence was submitted which tended to show that such overdrafts probably occurred as a result of delayed delivery of the semi-monthly remittances. It also appears that balances in bank after cashing semi-monthly payroll checks were retained in the bank and carried forward for the payment of the next semi-monthly series of paymaster's checks or orders. This fact, together with the overdrafts and the form of statement rendered to plaintiff, and other circumstances of similar nature, are relied upon by defendants as circumstances indicating that the deposit in question was nothing more than a general deposit.

It is well established by prior decisions of this court that in order to constitute a preferred claim it must be shown that (1) the transaction created the relation of principal and agent, as distinguished from a creditor and debtor relationship, thus making the bank a trustee for the benefit of plaintiff; (2) that by the transaction the assets of the bank were augmented; and (3) that the trust funds can be traced into the possession of the bank. (*McDonald* v. *American Bank & Trust Co.,* 79 Mont. 233, 255 Pac. 733; *Montana-Dakota Power Co.* v. *Johnson,* 95 Mont. 16, 23 Pac. (2d) 956, 958; *Powell Building & Loan Assn.* v. *Larabie Brothers Bankers,* 100 Mont. 183, 46 Pac. (2d) 697; *Conley* v. *Johnson,* 101 Mont. 376, 54 Pac. (2d) 585.)

In determining whether a deposit constitutes a special deposit, consideration must be given only to the relationship existing between the depositor and the bank. (*Pethybridge* v. *First State Bank of Livingston,* 75 Mont. 173, 243 Pac. 569.) A deposit is ordinarily presumed to be a general deposit. (*Powell Building & Loan Assn.* v. *Larabie Brothers Bankers,* supra.) However, it is quite generally held that a bank deposit is subject to any agreement which the depositor and banker may make, and that a special deposit may be

created either by express agreement of the parties, or by circumstances indicating that such was the understanding of the parties. (*Pethybridge* v. *First State Bank of Livingston,* supra; *Montana-Dakota Power Co.* v. *Johnson,* supra.) In the last-cited case it was said: "If a deposit is authorized, it must be either general or special, for there is no other kind of deposit; a special deposit becomes such by specific direction or agreement, or through circumstances sufficient to create a trust; otherwise the deposit is general and the bank merely becomes a debtor of the depositor; in the absence of such contract or circumstances, a deposit will be deemed a general deposit." (See, also, annotation in 31 A. L. R. 473, and *Conley* v. *Johnson,* supra.)

In the light of the foregoing rules as applied to the facts in this case, we are of the opinion that plaintiff was entitled to a preference claim. The deposit in question was clearly a special deposit by virtue of an express agreement between plaintiff and the bank, as contained in the letters of transmittal by plaintiff and the letters acknowledging receipt thereof by the bank. That such was the intention of the parties is manifest from the evidence not only with reference to those letters, but also with reference to the circumstances surrounding the entire transaction. In this connection the record discloses the rather significant fact that in 1922 the defendant bank requested plaintiff to change the manner of handling the account so that the paymaster's checks might be made by their terms payable at defendant bank. After plaintiff had refused this request, defendant bank, on September 8, 1922, in a letter to plaintiff, stated: "We hope the time will come in the near future when you will find it advantageous to carry a regular account with this bank." The evidence discloses, however, that no change in the manner of handling the account was ever in fact made.

The case of *In re Warren's Bank,* 209 Wis. 121, 244 N. W. 594, 596, 86 A. L. R. 371, is, upon the facts presented, almost identical with the instant case. That case involved a deposit made in a Wisconsin bank by this same plaintiff. Just as in

the instant case, the deposit was maintained for the purpose of providing means for plaintiff's employees to cash their paymaster's checks. The Warren Bank was not one of the banks listed on the paymaster's checks. It returned the pay checks to the treasurer of plaintiff company directly, and not through the clearing-house, just as here. The Warren Bank became insolvent and plaintiff sued to establish a preferred claim. In sustaining plaintiff's contention the Wisconsin supreme court employed the following pertinent language: "We think it plain that the money forwarded every two weeks by the railroad company to the bank was forwarded for the special and exclusive purpose of enabling the bank to handle the pay checks of the company with a minimum of inconvenience to the bank, and that in doing so the bank acted as the agent of the company in placing in the hands of the employees of the company the cash which the company owed its employees. It is clear to us that the bank did not obtain title to this money, nor did it become the mere creditor of the company. It held this money as a fiduciary. Whether the fiduciary relation was that of principal and agent, or mere trustee, is not material." There the pay checks were not drawn on the Warren Bank; the plaintiff never drew checks on that bank, and the bank owed no duty to honor the paymaster's checks, as would have been the case had checks been drawn directly upon a general account. It also appears that the checks were returned directly to plaintiff without passing through a clearing-house. It will be noted that in all of these particulars the case corresponds exactly with the case at bar.

It may be observed that plaintiff's right to a preference appears to be much stronger in this case than it was in the *Warren's Bank Case,* because in the instant case there is clearly a special deposit by virtue of a specific agreement, while in the *Warren's Bank Case* a special deposit was said to have been created solely by the circumstances surrounding the transaction and in the absence of any specific agreement to that effect.

Defendants, in attempting to distinguish this case from the *Warren's Bank Case,* point out particulars wherein the facts existing in the two cases are different. In most instances the differences are more imaginary than real. The only material differences that we observe are the fact that in the instant case it is shown that the account had on several occasions been overdrawn, and that in the *Warren's Bank Case* the funds were held by the bank only so long as checks remained unpaid, at which time the bank would remit to the plaintiff any balance remaining undisposed of; whereas in this case the unused balance was retained by the bank and used along with the next semi-monthly transmittal from plaintiff to meet the next payroll. As we view the matter, these alleged distinctions are of no particular importance, and they do not in any manner destroy the force or application of the *Warren's Bank Case* as a precedent.

With regard to the overdrafts, the evidence is clear that plaintiff never had any notice or knowledge of their existence. Hence they cannot be considered as a circumstance indicating that a general deposit was intended. As was said in *Fralick* v. *Coeur D'Alene Bank & Trust Co.,* 36 Idaho, 108, 210 Pac. 586, 588: ''The particular method of bookkeeping employed by the bank, unless brought to the knowledge of the Utilities Company, would not be controlling in this case.'' Likewise we fail to see wherein the fact that the unused balance was retained by the bank in the fund, in any manner affected or changed the effect of the specific directions accompanying each deposit to the effect that it was for a special purpose.

We have adverted at considerable length to the *Warren's Bank Case* because of its close similarity to the case at bar. There are also many other cases somewhat similar, wherein the same result has been announced. (See *Central Coal & Coke Co.* v. *State Bank of Bevier,* 226 Mo. App. 594, 44 S. W. (2d) 188; *Northwest Lumber Co.* v. *Scandinavian American Bank,* 130 Wash. 33, 225 Pac. 825, 827, 39 A. L. R. 922; *Equity Elevator & Trading Co.* v. *Farmers' & Merchants' Bank,* 64 N. D. 95, 250 N. W. 529.)

Defendants contend that there was no special deposit here because the deposit was made by check, and that there was therefore nothing as to which the bank could become bailee or trustee. They cite several cases as laying down the general proposition that a special deposit is one for safekeeping, in which the depositor is only entitled to the identical thing deposited. A similar contention was raised in the case of *Northwest Lumber Co.* v. *Scandinavian American Bank,* supra, and was there rejected. In speaking of that matter, the court said: "Nor do we think it accurate to say that the check was not cashed. Plainly it was cashed as between the parties as to all intents and purposes, by the mere issuance and acceptance of the check with that understanding. The pertinent matter in the objection is the fact that there was no actual segregation of the fund—no separation of it from the bank's general fund. But this objection is answered by the rule with respect to the intermingling of funds. Since there can be a recovery where the bank intermingles its special funds with its general fund, so on the like principle can there be a recovery where the bank leaves a special fund intermingled with its general fund after it becomes its duty to segregate it." (See, also, *In re Warren's Bank,* supra.) So it would seem here that the plaintiff's check must be considered as having been cashed; and the mere fact that the bank may have neglected to segregate the requisite funds into a special deposit fund, will not bar plaintiff's right of recovery.

Finally the question is presented as to whether the funds were sufficiently traced to permit the allowance of a preferred claim. As we have already indicated, the bank did not segregate the funds and preserve them thus identified; it allowed them to become commingled with its general assets. The evidence shows that at the time the bank closed there was on hand in cash, only about $11,000, and that other preferred claims have been filed and allowed. Defendants contend that this is the only fund out of which plaintiff could be allowed a preferred claim. Plaintiff, on the other hand, contends that money due to defendant bank from other banks was

cash on hand, and, as such, subject to the payment of preferred claims; and it points out that there were in the possession of defendant bank at the time it closed, cash funds and balances in correspondent banks greatly in excess of the amount claimed by plaintiff and all other preferred creditors. This, it is asserted, is a sufficient tracing of the funds.

This court has held that a trust fund is traceable not only into the cash in the vaults of the bank, but also in the deposits in correspondent banks. (*Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596; see, also, *Blythe* v. *Kujawa*, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330.)

The case of *State ex rel. Rankin* v. *Banking Corporation of Montana*, 77 Mont. 134, 251 Pac. 151, 153, cited and relied upon by defendants in this connection, is not in point here. In that case it did not "appear that any of the money received by the bank in payment of the bonds was commingled with the funds deposited in banks." In the instant case it appears that the deposit was made by check upon the Metals Bank in Butte. Thus the case of *Yellowstone County* v. *First Trust & Savings Bank*, supra, is applicable and controlling.

The district court was correct in finding and holding that plaintiff was entitled to a preference claim. The judgment is therefore affirmed.

Associate Justices Matthews, Anderson and Morris concur.

Mr. Chief Justice Sands, absent on account of illness, did not hear the argument and takes no part in the above decision.