CONLEY ET AL., TRUSTEES, RESPONDENTS, *v.* JOHNSON, SUPER-
INTENDENT OF BANKS, ET AL., APPELLANTS.

(No. 7,451.)

(Submitted November 2, 1935.   Decided February 1, 1936.)

[54 Pac. (2d) 585.]

*Mr. John G. Brown* and *Mr. William A. Brown,* for Appellants, submitted a brief; the latter argued the cause orally.

*Mr. John T. Andrew* and *Mr. W. H. Maloney,* for Respondents, submitted a brief.

## Opinion: PER CURIAM.

This is an appeal from a judgment of the district court of Powell county. Larabie Brothers Bankers, Inc., was a banking institution and did business at Deer Lodge for a considerable number of years previous to March 22, 1933. On the last-named date the bank was closed and taken over by the Superintendent of Banks of the State of Montana for liquidation in conformity with the Banking Code of Montana. (Chap. 89, Laws 1927.) At some time prior to July, 1928, W. A. Clark, Jr., then a resident of Butte, Montana, delivered to the bank the sum of $25,000. At that time an agreement was entered into between Clark and the bank, and Don Larabie and Frank Conley. Later Don Larabie died, and on July 1, 1928, a new agreement, presumably a copy of the first one, was entered into between the parties. It is this new agreement that constitutes the basis for controversy in the present action. It reads as follows:

"This memorandum witnesseth: That W. A. Clark, Jr., of Butte, Montana, has given in trust to the Corporation, Larabie Brothers, a banking institution of Deer Lodge, Montana, the sum of $25,000 to the end that such corporation shall pay semi-annual interest on said sum at the rate of 4% per annum, and shall pay said semi-annual interest January 1 and July 1 to Frank Conley and C. E. Larabie, of Deer Lodge, Montana, jointly also in trust, to the end that said Conley and said Larabie may apply such interest moneys as the same may be paid to the repairing of or the replenishing of or to the supplying of musical instruments to the band of the state prison at Deer

Lodge, Montana, as the said trustees Conley and Larabie may be advised, so long as said prison shall have and maintain a band therein and thereat. The interest-bearing period of the aforesaid sum of $25,000 shall begin July 1, 1928.

"Upon the death or resignation of said Conley or said Larabie the said W. A. Clark reserves the right to nominate any successor or successors to the trust.

"In the event such State Prison shall dispense with its band for any reason, then in that event the corpus of the trust and any interest accrued thereon shall instantly revert to the said W. A. Clark, Jr., or to his heirs.

"In acknowledgment of the receipt of the trust fund of $25,000 and in acknowledgment of the trust itself, Larabie Brothers has hereunto set its hand and seal (in duplicate) at Deer Lodge, Montana, on this first day of July, A. D. 1928.
❋  ❋  ❋

"We the undersigned, Frank Conley and C. E. Larabie, both of Deer Lodge, Montana, do hereby declare that we will act as trustees to effectuate the trust expressed in the above and foregoing memorandum, will so act without any compensation for our services to be rendered in such behalf.

"Witness our hand in duplicate at Deer Lodge, Montana, this 1st day of July, A. D. 1928.

"FRANK CONLEY.
"C. E. LARABIE."

The money was never drawn out of the bank, and Conley and Larabie continued to draw the agreed income or interest thereon. On November 29, 1933, after the bank had closed, and during the time for the presentation of claims, Clark presented a claim to the superintendent of banks in the following form:

"W. A. Clark, Jr., being first duly sworn, deposes and says that Larabie Brothers Bankers, Inc., is justly indebted in the sum of twenty-five thousand dollars ($25,000.00), besides interest, upon the following claim, to-wit:

"Deposit by the affiant on or about July 1, 1928, made in trust under written declaration (a copy of which is hereto an-

nexed) for the benefit of the prison band at the state prison at Deer Lodge, Montana. Liability No. 891, $25,000.00.

"This liability is for funds held by said bank in trust, and is a preferred claim, entitled under the decisions of the Montana Supreme Court and under section 134 of Chapter 89, Montana Session Laws of 1927, to be paid next after expenses of liquidation, in the second order of priority as defined in said section 134, and before liabilities mentioned in said section 134 as of lower orders of priority—and demand is now made for allowance in full as such preferred claim with such priority.

"All of which is due and payable to such trustee as may be lawfully appointed in place of said Larabie Brothers Bankers, and affiant makes this claim because he is the declarant of the trust set forth in said Declaration, is the person entitled to reversion thereunder, and has a beneficial interest in the due execution of said trust; affiant further says that neither he nor anyone else, to his knowledge, has given any endorsement or assignment of the same or any part thereof, and that he knows of no set-off or equitable defense to said claim or any part thereof, and that the facts set forth in said claim are each and all thereof true.

"[Signed]  W. A. Clark, Jr.,

"Residence, Butte, Montana."

The claim was duly verified and acknowledged, and to it was attached a copy of the trust memorandum.

It will be observed that the claim contained a demand that the amount thereof be allowed as a preferred claim, on the theory that the money was delivered to the bank in trust. The superintendent of banks denied the preference right, but allowed the claim as a general one. Thereafter Conley and Larabie instituted this action against Johnson, as superintendent of banks, and against the liquidating agent acting under him.

No question of parties was raised in the lower court or in this court, except the following statement contained in defendants' brief: "It will be noted that although Clark made the deposit, was the creator of the trust as to the interest on the

deposit, and made the claim to the superintendent of banks, this action is brought by and in the name of Frank Conley and C. E. Larabie, as trustees.'' Reference to the language of the claim discloses the fact that Clark did not present the claim strictly in his own behalf. The claim recites that ''Larabie Brothers is justly indebted in the sum of $25,000 besides interest,'' but instead of saying that the bank was indebted to Clark, it in effect recites that the indebtedness is due under the terms of the memorandum agreement which was attached to the claim. This memorandum speaks for itself as to who is entitled to the money and to whom the debt would be due when allowed. Significant, also, is the language of the claim which says: ''All of which is due and payable to such trustee as may be lawfully appointed in place of said Larabie Brothers Bankers.'' It is obvious that the claim, therefore, was not presented by Clark in his own behalf alone, but was presented in behalf of all parties interested under the memorandum agreement. Conley and Larabie, as trustees of the income or interest, were claimants. They, as trustees, were interested in the perpetuation of the fund that it might provide revenue for their trust. The law under which the suit was instituted, section 132 of Chapter 89, Laws of 1927, provides that the action of the superintendent of banks when taken upon a claim shall be final unless an action be brought by the claimant against the bank, etc. This section also provides that an appeal from the superintendent's allowance, either as to priority or amount, may also be taken to the district court of the proper county by any party in interest. Conley and Larabie, as trustees, were certainly parties in interest. The record does not disclose that there was ever any question raised and argued either in the district court or in this court on appeal relative to the right of Conley and Larabie to maintain the action except the quoted suggestion from appellants' brief. In any event it is plain that the only controversy involved here may be completely determined without the presence of other parties. The district court had only the question of the legal status of the $25,000 before it, and that is all we

have here. That question may be properly and fully settled in the action as presented. (See *State ex rel. Valley Center Drain District* v. *Board of County Commissioners*, 100 Mont. 581, 51 Pac. (2d) 635, and authorities cited.)

The cause came to trial before the court without a jury. Thereafter the court made and entered findings of fact and conclusions of law. The findings of fact were to the effect that Larabie Brothers Bankers, Inc., was a bank doing a general banking business at Deer Lodge prior to March 22, 1933; that on the last-named date it was taken over by the state superintendent of banks, and at the time of the trial was in his charge and in process of liquidation; that on or about July 1, 1928, W. A. Clark, Jr., delivered to the bank the sum of $25,000 under and subject to the provisions of the written memorandum; that the same became and was a trust fund by the terms of the contract, and that Frank Conley and C. E. Larabie became trustees thereof; that at all times after the delivery to the bank it retained its character as a trust fund, and was such at the time of the closing of the bank, and was a proper subject of a preferred claim against the assets of the bank; that a claim was filed in due form setting forth the nature of the trust and asking that it be allowed as a preference claim; that the superintendent of banks in his official capacity did on the thirtieth day of June, 1934, reject the claim as a preference claim, but allowed it as a general claim, and issued a certificate of such allowance; and, finally, that the claim so filed was entitled to be allowed as a preference claim.

From the findings of fact the court entered conclusions of law: (1) That the sum of $25,000 was and continued to be a trust fund and not a general deposit; and (2) that it was entitled to be allowed as a preferred claim under the laws of Montana. Judgment was entered accordingly, directing the allowance of the claim as a preferred claim under the liquidation sections of the Banking Act of Montana. Thereafter this appeal was perfected.

The specifications of error state the grounds for appeal in several different ways, but the very able, comprehensive and carefully prepared brief of appellants tenders the issue in the following manner: "As the pleadings show, the only issue on the trial of the action was whether there was a preferred claim against the assets of the Larabie bank for the $25,000 deposit." The record discloses that no other questions were raised or presented either in the district court or here. It is therefore unnecessary to restate the specifications of error.

At the outset of the discussion it must be borne in mind that the general principles involved in a trust relation are statutory. Section 7879, Revised Codes 1921, provides that "a voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another." Section 7884 provides that "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust; and, 2. The subject, purpose and beneficiary of the trust."

The "trust memorandum" here involved must be considered in the light of the foregoing provisions. It seems obvious that Clark, being possessed of the sum of $25,000, was desirous of contributing to the continued support of the prison band; that he had personal confidence in the Larabie bank; and that the bank voluntarily accepted the money as a trust and assumed the responsibilities imposed by the express terms of the memorandum contract. It is equally plain that the fund was created for the benefit of another—the prison band. Everyone, upon whom any obligation rested under the contract, accepted the burdens and responsibilities imposed thereby. Clark performed his part of it by giving the money over to the bank, thereby parting with it absolutely for "so long as the prison shall have and maintain a band." The bank accepted the obligation imposed upon it, and Conley and Larabie likewise accepted the obligations imposed upon them. Clark's obligation was completely met by the delivery of the money. The obligations of the bank, desig-

nated as trustee of the principal sum, were to be continuing, as were also the obligations of Conley and Larabie.

Appellants say: "It is clear beyond doubt that W. A. Clark, ██ Jr., intended some kind of trust to be created. But it seems clear beyond doubt that he did not intend by this instrument, the so-called trust memorandum, to create two trusts. It seems his clear intention that the only trust which he wished to create was as to the 4 per cent. interest—the income—from the $25,000 deposit." We cannot agree with that statement. It seems obvious to us that the language of the memorandum does contemplate two trusts. The sum of $25,000 was given in trust to the bank in very plain and explicit terms, and then the interest was directed to be paid to Conley and Larabie "also in trust," for the use of the band. So we say that by the terms and provisions of the writing two trusts were actually created and two trustees designated: One, the bank for the principal sum; and the other Conley and Larabie as administrators of the interest or income funds. However, the only question presented for solution here is, as stated by appellants in their brief, "whether from the terms of the trust agreement there is a preferred claim to the $25,000."

It seems to us to be unnecessary to devote much time or space ██ to the interpretation of the language of the contract. That matter is controlled by law. Section 10519, Revised Codes 1921, provides that in the construction of an instrument, the office of the court is simply to ascertain and declare what is in terms or in substance contained therein. (See, also, *Square Butte State Bank* v. *Ballard*, 64 Mont. 554, 210 Pac. 889; *Maki* v. *Anaconda Copper Min. Co.*, 87 Mont. 314, 287 Pac. 170; *Montana Beer Retailers' Protective Assn.* v. *State Board of Equalization*, 95 Mont. 30, 25 Pac. (2d) 128.)

Appellants contend that because the trust memorandum—the contract between the parties—contained a provision to the effect that interest at 4 per cent. per annum should be paid to Conley and Larabie for the use of the band, the designation of the principal sum as a trust was without effect and futile; that the trans-

action perforce only amounted to a deposit of the money with the bank; and that thereby there was created between Clark and the bank the relation of debtor and creditor—a very different relation from that described by the words of the contract. This contention is based on the further claim that the funds were never kept separate and apart, but were mingled with other funds of the bank. There is no merit in the latter contention. The mingling of the funds did not destroy the effect of the trust feature, if indeed a trust ever existed, so long as the trust funds could be traced in the hands of the bank. (*Hawaiian Pineapple Co.* v. *Browne*, 69 Mont. 140, 220 Pac. 1114; *McDonald* v. *American Bank & Trust Co.*, 79 Mont. 233, 255 Pac. 733; *Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, 80 Mont. 174, 259 Pac. 1060; *Powell Building & Loan Assn.* v. *Larabie Brothers Bankers, Inc.*, 100 Mont. 183, 46 Pac. (2d) 697.)

The proposition that the transaction between Clark and the bank did not create a trust relation, but rather created the relation of debtor and creditor, or, to put it in another way, that Clark merely became a depositor in the bank, is worthy of consideration. This court has said, in *Montana-Dakota Power Co.* v. *Johnson*, 95 Mont. 16, 23 Pac. (2d) 956, 958: "If a deposit is authorized, it must be either general or special, for there is no other kind of deposit; a special deposit becomes such by specific direction or agreement, or through circumstances sufficient to create a trust; otherwise the deposit is general and the bank merely becomes a debtor of the depositor." The court then proceeded to say that in the absence of contract or special circumstances, a deposit would be deemed a general deposit. (See, also, sec. 52, Chap. 89, Laws 1927.)

The conditions existing here do not bring the transaction within the meaning of a deposit, either general or special, unless it can be said that the bank had no power or authority to accept the money with the interest obligation imposed, in any other manner than as a deposit. To express it otherwise, it is the

apparent theory of appellants that the bank received the money under such circumstances, including the conditions of the contract, that the transaction was actually a deposit and automatically created the relation of debtor and creditor rather than the trust relation. This contention is only tenable, in the face of the plain provisions of the contract, on the theory that the parties had no right to contract for the acceptance of a trust fund with a fixed rate of interest to be paid thereon. It will at once become obvious that this contention must necessarily involve the power and authority of the bank to accept the fund with the interest provision in effect. Numerous authorities are cited and relied on by appellants to show that in the absence of contract such a transaction does actually create the relation of debtor and creditor. The force of these authorities, however, must be dissipated by the existence of the contract with specific provisions. Here there can be no doubt but what it was the intention of the parties, as expressed in the contract, that the possession of the $25,000 was to be in trust. Neither can there be doubt about the interest provision. Interest at a fixed rate was to be, and was actually, paid by the bank to Conley and Larabie. These provisions were certain and emphatic; and unless the bank was without power to so contract with relation to a trust fund, they were legal and binding.

The general rule of law is that there is a presumption that the acts of a corporation are not *ultra vires*. (*McMahon* v. *Cooney*, 95 Mont. 138, 25 Pac. (2d) 131.) In the case of *Heinz* v. *National Bank of Commerce*, 237 Fed. 942, 952, the Circuit Court of Appeals of the Eighth Circuit announced the rule that the same presumption of legality which attends the acts of a natural person attends the acts of a corporation, unless they are plainly and upon their face outside the powers of the corporation. The court there quoted from 2 Thompson on Corporations, section 2120, as follows: "A person who questions such transactions cannot assume either that the corporation had no power to act, or that in the given transaction the corporation exceeded its power, and that hence it must show that the trans-

action was within the scope of its powers. Precisely the opposite rule obtains. The maxim, '*Omnia acta rite esse praesumuntur*,' applies to the transactions of corporations as well as to individuals.'' The court then indulged in the following language, which is very pertinent here: ''The tests in regard to all such matters are: Is the act or transaction prohibited by the charter or other law? Is the act or transaction reasonably suitable and necessary for the carrying on of the business for which the corporation was created and organized? Is the act or transaction performed in good faith, or as a mere cloak to some illegal or fraudulent act?''

Volume 6 of the work entitled Fletcher's Cyclopedia Corporations (1931 ed.), section 2505, contains a pertinent discussion. There it is said: ''The powers of a corporation are ordinarily matters of allegation and proof. In ascertaining such powers, however, the court will take judicial notice of the general laws of the state under which the corporation was formed, or of a domestic corporation's charter. The same presumption of legality which attends the acts of a natural person attends the acts of a corporation, unless they are plainly and upon their face outside the powers of the corporation. There is no presumption of abuse or excess of corporate power. On the contrary, there is, in the absence of evidence to the contrary, a presumption that the corporation's acts and contracts were within its express or implied powers.''

Here no question was raised as to the corporate existence of the bank. However, we must take judicial notice of the fact that it was a state bank chartered under the laws of Montana, or, otherwise, under the provisions of our laws the superintendent of banks would not be in charge of the assets and would not be liquidating the bank. Neither was there any question actually raised at any stage of the proceedings as to the powers of the corporation in the respect indicated; but the contention that the interest provision of the contract destroys the trust feature and absolutely nullifies the plain terms of the contract must bring us to a consideration of the powers of the corpora-

tion in that respect. To us the contract seems so plain, so unambiguous, and so certain that if the corporation had a right to enter into it, its provisions are bound to be unescapable.

Of course, as we have said, we have a right to take judicial ██ notice of the statutes of Montana. The so-called Banking Code (Chap. 89, Laws 1927) enumerates and defines the powers of a trust company. (Subd. 1, subsec. (c), sec. 4.) That provision reads: "To receive moneys in trust, and to accumulate the same at such rates of interest as may be obtained or agreed upon, or to allow such interest thereon as may be agreed upon." Thus it will be seen that a corporation, a bank, exercising the powers of a trust company, has specific authority to receive moneys in trust, and may allow an agreed rate of interest thereon. The bank here designated as Larabie Brothers Bankers, Inc., is referred to in the memorandum contract as "Larabie Brothers, a banking institution," and as a corporation. It is shown by the record that Larabie Brothers was an incorporated banking corporation and that the corporation was in process of liquidation by the Superintendent of Banks of Montana under the provisions of the Montana Banking Code, supra. Therefore it was unquestionably admitted by all concerned that the bank was a Montana corporation.

While we do not think it necessary in this particular instance to take judicial notice of the charter of this domestic corporation or to avail ourselves of the authority already adverted to in that regard, nevertheless it is interesting to observe that the articles of incorporation which constituted its charter in this state, and which are on file in the office of the Secretary of State, disclose the fact that within the enumerated powers thereof there is included the exact language of the section of the Montana Act already quoted. (Subd. 1, subsec. c, sec. 4, Chap. 89, Laws 1927.) It is not necessary in this instance to rely on the articles of incorporation or to go further than to announce the rule laid down by the Montana case of *McMahon* v. *Cooney,* supra, where it was said that the general rule of law is that there is a presumption that the acts of a corporation are not *ultra vires.*

We must hold that there was a presumption that the corporation had either direct or implied authority to enter into the contract. Nothing has been cited to the contrary. We have merely mentioned the additional considerations with relation to the affirmative provisions of the statute and the charter of the corporation to emphasize not only the fact that there was a failure to show that there was a lack of such power, but the fact that an attempt to do so would have resulted in demonstrating the fact that both statutory and charter powers existed.

In our opinion, the district court correctly found that the $25,000 fund constituted a trust fund. We are further of the opinion that that finding should be sustained. However, it will be obvious that the finding of the court that Conley and Larabie became the trustees of the $25,000 was not warranted and is erroneous. The memorandum contract never did assume to make Conley and Larabie trustees of anything more than the interest. The bank was designated as the trustee of the principal fund. The trust, however, will not fail for the want of a trustee.

The fund of $25,000 cannot, of course, be paid to or delivered to Clark's representatives until the prison band, the real beneficiary of the trust, is no longer in existence. If the band is never discontinued, the Clark people will never be entitled to any part of the fund, either principal or interest. So that in reality, while Clark had a sufficient interest to justify his filing a claim, the possibility of any of the fund ever reverting to him or his successors is very remote indeed. The controversy is not between the Clark people and the depositors. That is made plain by the claim. Clark did not therein assert any present right to the funds, but his claim upon its face seeks to continue the possession thereof in the hands of some trustee for the original purpose described in the memorandum contract.

It is, however, manifest that the bank, having quit business and being in process of liquidation, is not in a position to continue the trust and discharge the obligations of the contract. There is a vacancy in the trusteeship. Section 7925, Revised

Codes 1921, provides that the district court may appoint a trustee whenever there is a vacancy, and the declaration of trust does not provide a practicable method of appointment. (See, also, *Stagg* v. *Stagg*, 90 Mont. 180, 300 Pac. 539.) The failure of the bank did not terminate the trust, but did actually create a vacancy in the trusteeship. The finding of the court in the last-mentioned particular must be amended. The obligation rests upon the court to proceed in accordance with the section of the statute indicated. (See, also, Chap. 180, p. 385, Laws of 1935.)

The cause is remanded, with direction to amend the findings and judgment in conformity with this opinion; when so amended, the judgment will stand affirmed. Each party shall pay its own costs on this appeal.

ASSOCIATE JUSTICES MATTHEWS, STEWART, ANDERSON and MORRIS concurring.

MR. CHIEF JUSTICE SANDS, Dissenting: The purpose of the Constitution and our laws is to insure equality to citizens, both rich and poor alike. To insure this equality the Constitution of the state and the nation (Const. Mont., Art. III, sec. 27; Const. U. S., Amend. 14) each provide that no person shall be "deprived of life, liberty, or property without due process of law."

The pleadings are as follows:

"Title of Court and Cause.

"Complaint.

"Plaintiffs complain and allege:

"1. That the Larabie Brothers Bankers, Incorporated, prior to the filing of this complaint carried on and conducted in the City of Deer Lodge, Powell County, State of Montana, a general banking business, and conducted said business until the 22nd day of March, 1933, when said bank was taken over by the State Superintendent of Banks of the State of Montana.

"2. That on or about the 1st day of July, 1928, there was placed in trust in the said bank, by W. A. Clark, Jr., of Butte,

Montana, the sum of $25,000.00, for the use and benefit of the band of the State Prison at Deer Lodge, Montana; that the plaintiffs above named, Frank Conley and C. E. Larabie were named in the trust memorandum as trustees of said trust.

"3. That on the 22nd day of March, 1933, the date of the liquidation of said bank, the plaintiffs, Frank Conley and C. E. Larabie, were trustees of said fund and the said sum of $25,000.00 was on deposit in said bank and held by said bank for the use and benefit of the state prison band as herein set forth; that on July 7, 1932, C. E. Larabie, an officer of said bank, transferred the said sum of $25,000.00, held in trust as aforesaid, without the consent of the afore-mentioned W. A. Clark, Jr., from the general ledger to the savings department, and in violation of the trust memorandum.

"4. That the State Superintendent of Banks caused notice to be published in The Silver State Post, a newspaper of general circulation in Powell county, State of Montana, to the creditors of said banking institution to file claims with said Superintendent of Banks of the State of Montana; that within the time required by law the said W. A. Clark, Jr., filed proof of claim, setting forth the nature of the trust, and thereafter and on the 30th day of June, 1934, said claim was rejected by the said Superintendent of Banks of the State of Montana, as a trust deposit and allowed as a general claim.

"Wherefore plaintiffs above named pray that the said moneys be set forth and that they be paid off as funds held by the liquidating agents for the use and benefit of the said band of the State Prison at Deer Lodge, Montana.

"John T. Andrews, W. H. Maloney, Attorneys for plaintiffs, Butte, Montana.

"Title of Court and Cause.

## "Answer.

"Come now the above named defendants and answering the complaint of the plaintiffs herein on file, admit, deny and allege as follows:

"1. Admit the allegations of Paragraph 1.

"2. Admit that on or about the first day of July, 1928, W. A. Clark, Jr., then residing at Butte, Montana, but now deceased, deposited in Larabie Brothers Bankers, Inc., the sum of $25,000.00 under an express contract with said bank that interest was to be paid upon said deposit and the interest would be disbursed for the use and benefit of a band in the Montana State Prison, all as is more fully set forth and appears in a certain written instrument delivered to said bank at the time of the deposit, copy of which is hereto attached marked Exhibit 'A' and made a part hereof and in this connection the defendants allege that pursuant to the request of the depositor and his agreement with the bank, the bank continued to pay interest upon said deposit for the use and benefit of said band account up until the time it closed its doors and ceased to function as a bank and that said account was with the knowledge of the depositor at all times carried as a savings account in said bank with the income therefrom used and disbursed by the trustees for the benefit of the band in the Montana State Prison and said account was not otherwise deposited, carried or handled.

"3. Answering Paragraph 4 defendants admit that within the time required by law and the notice to creditors of Larabie Brothers Bankers, Inc., to file claims, W. A. Clark, Jr., filed a claim against the Larabie Brothers Bankers, Inc., then in liquidation on account of said deposit. That hereto attached, marked Exhibit 'B' and made a part hereof to all intents and purposes as though set forth at length herein is a true and correct copy of said claim. That no other claim has been filed for said funds. That the Superintendent of Banks acting in his official capacity and with the discretion allowed him did on the 30th day of June 1934 reject such claim as a preference claim and allow it as a general claim against said trust and issued and delivered to the executors of the estate of W. A. Clark, Jr., a certificate of allowance of such general claim.

"4. Defendants generally deny each, every and all of the allegations of plaintiffs' complaint not herein specifically admitted or denied.

"5. Defendant further alleges that he is the Liquidating Officer of said bank and in no way or manner interested in the matters involved in this controversy save and except as such Liquidating Officer and that it is necessary that he have orders and directions from this court as to the disposition of said claim.

"Wherefore defendants pray that this court require the plaintiffs and these defendants to set forth and present to this court all of the facts surrounding said deposit and in connection with the claim for preference herein sued upon and that upon a hearing had defendant's action in allowing said claim as a general claim be affirmed and approved and that this defendant be directed as to whom and in what manner said claim shall be allowed and paid.

"John G. Brown, L. V. Ketter, Attorneys for Defendants.

"And the claim as follows:

"Montana

"Office of Superintendent of Banks

"Helena            No. 802,

"In the matter of Larabie }
   Brothers Bankers, Inc. }

"Deer Lodge, Mont, In Liquidation.   Proof of Claim
"State of California,

   County of Los Angeles.

"W. A. Clark, Jr., being first duly sworn, deposes and says that Larabie Brothers, Bankers, Inc., is justly indebted in the sum of Twenty-five Thousand Dollars ($25,000.00), besides interest, upon the following claim, to-wit:

"Deposit by the affiant on or about July 1, 1928, made in trust under written Declaration (a copy of which is hereto annexed) for the benefit of the Prison Band at the State Prison at Deer Lodge, Montana. Liability No. 891 $25,000.00 This

liability is for funds held by said bank in trust, and is a preferred claim, entitled under the decisions of the Montana Supreme Court and under Section 134 of Chapter 89, Montana Session Laws of 1927, to be paid next after expenses of liquidation, in the second order of priority as defined in said section 134, and before liabilities mentioned in said section 134 as the lower orders of priority and demand is now made for allowance in full as such preferred claim with such priority.

"All of which is due and payable to such trustee as may be lawfully appointed in place of said Larabie Brothers Bankers, and affiant makes ·this claim because he is the declarant of the trust set forth in said declaration, is the person entitled to reversion thereunder, and has a beneficial interest in the due execution of said trust; affiant further says that neither he nor anyone else, to his knowledge, has given any endorsement or assignment of the same or any part thereof, and that he knows of no set-off or other legal or equitable defense to said claim or any part thereof, and that the facts set forth in said claim are each and all thereof true.

"[Signed]   W. A. CLARK, Jr.

"Residence, Butte, Montana.

"Subscribed and sworn to before me this 30th day of October, 1933.   [Signed]   John A. Fleming, Notary Public in and for the County of Los Angeles, State of California, Residing at 5658 Wilshire Bldg., Los Angeles.

"My commission expires September ——, 19—."

"Trust Memorandum.

"This memorandum witnesseth: That W. A. Clark, Jr., of Butte, Montana, has given in trust to the Corporation, Larabie Brothers, a banking institution of Deer Lodge, Montana, the sum of $25,000.00 to the end that such corporation shall pay semi-annual interest on said sum at the rate of 4 per cent. per annum, and shall pay said semi-annual interest January 1 and July 1 to Frank Conley and C. E. Larabie, of Deer Lodge, Montana, jointly also in trust, to the end that said Conley and

said Larabie may apply such interest moneys as the same may be paid to the repairing of or to the replenishing of or to the supplying of musical instruments to the band of the State Prison at Deer Lodge, Montana, as the said trustees Conley and Larabie may be advised, so long as said Prison shall have and maintain a band therein and thereat. The interest-bearing period of the aforesaid sum of $25,000.00 shall begin July 1, 1928.

"Upon the death or resignation of said Conley or said Larabie the said W. A. Clark, Jr. reserves the right to nominate any successor or successors to the trust.

"In the event such State Prison shall dispense with its band for any reason, then and in that event the *corpus* of the trust and any interest accrued thereon shall instantly revert to the said W. A. Clark, Jr. or to his heirs.

"In acknowledgment of the receipt of the trust fund of $25,000.00 and in acknowledgment of the trust itself, Larabie Brothers has hereunto set its hand and seal (in duplicate) at Deer Lodge, Montana, on this 1st day of July, A. D. 1928.

"LARABIE BROTHERS BANKERS, INC.

"By C. E. LARABIE, its President.

"W. A. CLARK, Jr.

"Attest: A. E. LEUDEMAN, its Secretary.

"We the undersigned, Frank Conley, and C. E. Larabie, both of Deer Lodge, Montana, do hereby declare that we will act as trustees to effectuate the trust expressed in the above and foregoing memorandum, and will so act without any compensation for our services to be rendered in such behalf.

"Witness our hand in duplicate, at Deer Lodge, Montana, this 1st day of July, A. D. 1928.

"FRANK CONLEY.

"C. E. LARABIE."

As before stated, the State and Federal Constitutions provide that no state shall "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." These great

principles of law, viz., equality and due process of law, are in my opinion violated by the majority opinion in this case. The facts of this case are not disputed and will not be repeated here except as is necessary. W. A. Clark, Jr., deposited in trust $25,000 in the bank of Larabie Brothers, Inc., upon which the bank was to pay 4 per cent. interest, which interest was to be paid to Frank Conley and C. E. Larabie as trustees for the support of the state prison band situated at Deer Lodge, Montana, "so long as said prison shall have and maintain a band therein." When the band ceased the $25,000 was to be returned to Clark. The deposit continued several years and the interest payments were made to Conley and Larabie and used by them to maintain the band until the bank superintendent "took over" the bank to liquidate it without any cause stated or proof alleged or any public hearing or court order or court proceedings whatever; Clark then presented a sworn claim for the $25,000 demanding therein a preference on the ground that this deposit was a "trust fund." The bank examiner denied the preference but allowed it as a general claim. A reading of the claim presented shows a curious reluctance in naming the beneficiary of the alleged trust and the same studied reluctance in the suit that followed to name the beneficiary all of which we are now trying to reduce to a certainty. Conley and Larabie then brought suit in their names as trustees naming themselves sole plaintiffs and the bank superintendent as sole defendant. The court decided the claim to be preferred, thereby depriving the general creditors of $25,000 of the assets of the bank. The district court and the majority opinion holds that the claim of Clark was preferred, as I understand it because of the use of the words "in trust" in the Clark deposit memorandum. I contend that these words in view of interest to be paid and the absence of any supervisory control of the fund reserved to Clark greater than other depositors negatives the trust character of the deposit. If the general creditors had known that their claims were to have second place in the distribution of the assets of the bank in case of insolvency, they undoubtedly would not have

deposited their money with a bank that would thus secretly prefer other depositors. The preference, if intended by Clark and the officers of the bank, would have amounted to a fraud on the general creditors, and, as fraud is never presumed by law, it cannot be presumed that a preference to Clark was intended by the unexplained words ''in trust'' found in the memorandum. Section 7889 in the Chapter on Trusts is as follows: ''A trustee may not use or deal with the trust property for his own benefit, or for any other purpose unconnected with the trust, in any manner.'' This section clearly contemplates that payment of the interest by a trustee (the bank, the subject of the trust) for the use of the $25,000, for the exclusive use of the bank without any control reserved to the trustor (Clark), clearly shows that no *trust* was intended. (*Butcher* v. *Butler,* 134 Mo. App. 61, 68, 69, 70, 114 S. W. 564, 567; 3 Pomeroy's Equity Jurisprudence, 1009; *Montana-Wyoming Assn. of Credit Men* v. *Commercial Nat. Bank,* 80 Mont. 174, 179, 259 Pac. 1060; *People* v. *California Safe Deposit & Trust Co.,* 23 Cal. App. 199, 137 Pac. 1111, 1115.)

It would appear that the term ''trustee'' has two meanings, a broad and a restricted one. If the broad meaning is intended in this case, all of the general depositors would come within that meaning, since in each instance the general deposits arose out of ''personal confidence reposed in and voluntarily accepted by the bank.'' The Clark fund was mingled in a common fund with the funds of the depositors. The money thus received by the bank was used as a common fund for the profit of the bank. The high rate of interest of 4 per cent. on this particular transaction was (from common knowledge though not apparent on the record) a very high rate of interest for the use of the Clark money. If the Clark money is to be used for the profit of the bank, the same fund should also share the losses in common with all the other general depositors. (Morse on Banks, 2, 567.) This common fund apparently suffered all the loss which tended to bring about the insolvency of the bank. If then the Clark deposit is to be preferred, it would be equivalent to a guaranteed

fund for Clark. The word "trust" has two meanings, a broad meaning as explained before, and the restricted meaning when applied to preferences in bank deposits. The restricted meaning refers only to those deposits which were segregated and the interest earned on such special deposit turned into a special fund which would when so deposited constitute a trust deposit. The syllabus in the case of *People* v. *California Safe Deposit & Trust Co.*, supra, so tersely expresses the conclusion of the court I repeat it: "A general bank deposit exists where the bank is given custody of the money deposited with the express or implied intention that the bank is not required to return the identical money but only its equivalent, in which case the legal title to the money passes to the bank. A 'special deposit' is where the bank merely assumes charge or custody of the property without authority to use it; the depositor being entitled to receive the identical thing deposited, in which case the title remains with the depositor, and, if the subject is money, the bank has no right to mingle it with its own funds."

"The mere fact that the deposit is of a trust fund, and known to the bank to be such, will not of itself make the bank a trustee of the funds for the benefit of the *cestui que trust,* so as to give him a preference over other creditors. In order to have that effect, there must be something in the circumstances of the deposit to constitute a special, as contradistinguished from a general, deposit, into which two classes all deposits in commercial banks may be divided. If the deposit belongs to the former class, the fiduciary relation might well arise; if to the latter, in the absence of *mala fides,* it could not do so, for by a general deposit in good faith the title to the fund deposited passed. The bank became the owner thereof. The relation of debtor and creditor, and not that of trustee and *cestui que trust,* was created. In other words, by a general deposit of the trust fund, whereby no misappropriation is intended or accomplished, the owner of the fund becomes a creditor of the bank and stands upon precisely the same footing as the other general creditors in the bank who are creditors thereof, and who is entitled to no pref-

erence over them." (*Montana-Wyoming Assn.* v. *Commercial Nat. Bank*, 80 Mont. 174, 259 Pac. 1060, 1061.)

"There is nothing to change our conclusion that this was a general deposit in the fact that the bank entered the transaction on its books in what it called 'a trust fund account.' That was a mere name used in bookkeeping, and, while its use has some evidentiary significance, it is not conclusive of the question of whether the account was general or special and is overborne by facts and circumstances of overwhelming weight which show that the deposit was intended to be general. The judgment is reversed. All concur." (*Butcher* v. *Butler,* supra.)

"On the other hand, if the words 'trust' or 'trustee' are employed, they do not necessarily show an intention to create or declare a trust." (3 Pomeroy's Equity Jurisprudence, 2239.)

Morse on Banking, volume 2, section 567, says: "When the very money or other thing deposited is to be restored, or is given to the bank for some specified and particular purpose, as to pay a certain note, or to act as agent for the collection of bills or notes deposited, the property does not pass from the depositor; when, however, the money is collected and credited, it becomes a general deposit, unless the instructions are to *collect and remit,* and then, there being no authority to credit, the bank acts as agent throughout." Also, in the same volume, section 630, and in respect to the mingling of funds as evidence of the character of the fund, our own court has said, *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140–148, 220 Pac. 1114, 1116: "With respect to tracing the fund, the law is that where a trustee mingles his beneficiary's money with his own and then invades the common store, he will be presumed to have used his own money first, because the law *presumes that a man does right rather than wrong.* The sum remaining in the hands of the trustee will be deemed the money of the beneficiary as far as necessary to make up, if possible, the full amount due him. The rule is well stated in L. R. A. 1916C (note) at page 86 as follows: 'Ever since the decision in *Knatchbull* v. *Hallett,* (1879) L. R. 13 Ch. Div. (Eng.) 696, 49 L. J. Ch. (n. s.) 415, 42 L. T. N. (n. s.) 421,

28 Week. Rep. 732, it has been the established rule in cases where a trustee has mingled with his own funds money held in trust, and then dipped into the common store and taken out and used a part, that, so long as a balance equal to the trust fund remains, it will be presumed that the money drawn out and used was the trustee's own money, and that the money left undrawn was the trust money. In cases where it has appeared that the balance left in the mingled store was less than the sum of money held in trust, the courts generally have presumed that the drawings out by the trustee began upon his own funds, and continued until they were exhausted, before he intrenched upon the trust money, and therefore, that whatever balance remained belonged wholly to the trust.' "

If the common fund is to suffer all the losses of the bank, the facts pertaining to such special trust fund could not be controlled by the general depositors for the reason that the Bank Law specially provides that the transactions of the bank shall be kept secret (secs. 6014-65, Rev. Codes Supp. 1927), and any officer or person disclosing the business transactions of the bank are made by law guilty of a crime. In other words, the transactions of a public corporation are closed to the people who trust such banks with their money, and the affairs of the bank, even after the bank is closed for the distribution of the remaining assets, are continued as secret thus leaving the door wide open for fraud. I do not charge, nor do I believe, that there was any fraud in this particular transaction; but I have no doubt the secrecy of bank transactions has in many cases closed the door to a disclosure and a prosecution for fraud and that many cases of fraud never came to light by reason of this secrecy.

I further believe that in particular the facts warranting a preference claim in the case of the distribution after the close of a bank should be presented to every depositor whose claim is not fully paid and the circumstances thereto disclosed should be opened to such claimants with opportunity to object.

However, I place the greater stress upon the failure of the district court in this instant case to bring in all the parties

necessary to a complete determination of this controversy before entering judgment therein. Of this error I am sure there should be no controversy. The claim as a basis of this suit was filed by Clark. The trustees for the band did not join with Clark in making the claim. Clark did not join as plaintiff or otherwise in this action as clearly appears by the record. Clark is the principal claimant and an indispensable party to the complete determination of this action. The judgment could not bind Clark as he was not a party, and therefore the section of our statutes, section 9090, requiring the court to bring in all necessary parties before further proceedings in the trial was ignored. Section 9090 is as follows: ''The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in.'' (Pomeroy's Code Remedies, 4th ed., sec. 176; *McKenzie* v. *Evans,* 96 Mont. 1, 29 Pac. (2d) 657.)

The absence of a necessary party, either plaintiff or defendant, can be raised at any time even by the supreme court of its own motion as in the instant case. This is the first mention of this defect of parties. (*Peck* v. *Peck,* 33 Colo. 421, 422-425, 80 Pac. 1063; *Mitau* v. *Roddan,* 149 Cal. 1-9, 84 Pac. 145, 6 L. R. A. (n. s.) 275; *McKenzie* v. *Evans,* supra.) The bank examiner on his own initiative determined, I presume, that the bank was insolvent, although the cause for ''taking over'' the bank is not stated anywhere in the record and without other authority he undertook to administer the bank's affairs including the determination of the order of payment of claims. In this case he did not approve the preference claimed by Clark but the district court thought otherwise. In a direct proceeding the district court rendered judgment holding the Clark claim to have preference over the general creditors and such order comes here on this appeal. The bank superintendent is not a judicial officer. He is an administrative officer only. The

legislature by authorizing the appointment of a bank superintendent by the Governor did not make him a judicial officer. The legislature might perhaps provide for his appointment in a judicial capacity if he was otherwise qualified and upon proof of notice to all the creditors and to other interested parties in such bank affairs and upon proper application have the bank declared insolvent, but until the insolvency of the bank is so judicially found the rights of creditors cannot be taken over by a bank superintendent without the consent or the default of creditors. The bank superintendent was merely a stranger to this proceeding and did not represent the creditors until such creditors were brought into court by proper notice. Any action taken in the present proceeding without authority of the general creditors was not a consent thereto as they were ''never in court.'' The creditors were thereby, in the district court decision, ''deprived of their property without due process of law.''

The attempt of the attorneys for the bank superintendent, if such was their intention, was without authority of the general creditors and any admission made in the answer is ineffective to operate as a waiver of the rights of such general depositors as is apparent by referring to section 6014–132, Rev. Codes Supp. 1927, which names the proper parties to such actions. Section 6014–132 reads as follows: ''The superintendent shall reject or allow all claims in the whole or in part, and on each claim allowed shall designate the order of its priority. If a claim is rejected or an order of priority allowed lower than that claimed, notice shall be given the claimant personally or by registered mail, and an affidavit of the service of such notice, which shall be prima facie evidence thereof, filed in the office of the superintendent. The action of the superintendent shall be final unless an action be brought by the claimant against the bank in the proper court of the county where the bank is located within ninety days after such service to fix the amount of the claim and its order of priority or either. An appeal from the superintendent's allowance, either as to priority or amount, may also be taken to the district court of such county

by any party in interest by serving on the superintendent notice thereof, stating the grounds of objection and filing the same in said court within thirty days after allowance. Within five days after such notice, the superintendent shall file in the court, and serve on the appellant, a copy of the claim and his reasons for allowance. The court or judge shall, after five days' notice of time and place of hearing on the issues thus made, hear the proof of the parties and enter judgment reversing, affirming or modifying the superintendent's action.''

The testimony at the trial is only important in what it does not prove. Particularly it fails to prove that the prison band still exists. The answer, if it has any place in the pleadings at all, perhaps cures the band boys' silence on the question of their existence. Before proceeding further let us examine the law pertaining to this case—not all of it because that is not necessary. There are no parties; there is no lawsuit. The proceedings hereunder are based on the Bank Act, a Code passed in 1927 comprising 144 sections and covering 72 pages. It is the ''last thing'' in bank law. The little fellow puts his money in the bank, and if he ever squeals and when the big fellows take it out as preferred claims he is lucky to keep out of the prison band. However, the Code was fixed so that there was little danger from the small depositor. He would not even learn enough about the disposition of his money in the busted bank to get curious enough to try to learn how many preferred claims it took to get all the money—the bank president left when he locked the bank door. Referring to the pleadings, the court has often said conclusions of the pleader do not raise issues. The answer, by pleading the Clark deposit memorandum, makes it possible to understand ''what it is all about.'' But notice the last paragraph of the answer of the bank superintendent wherein he says he has ''no interest in the suit,'' which is correct. The superintendent might have been designated an agent to appear for the defendant, but no effort was made in the statute to do anything of that kind. Section 6014–132 (of the Bank Act, supra) says the bank shall be the defendant in any actions

of this kind. It is the only place where *parties* in proceedings of this character are provided for in the "Bank Act." The duty of the defendant is definitely fixed in the section mentioned and that is to *report to the court* his reasons for classifying the claim as he did. He is *adviser* to the court and not a *party* to it. Such being the law, it is plain the superintendent's attorneys had no authority by filing an answer to waive anything and the answer did not cure the defects of the complaint. This complaint alone certainly does not raise an issue, make a lawsuit, or provide a defendant.

My chief objection to the majority opinion and the Bank Act is that it violates both the Federal and State Constitutions. "No person shall be deprived of life, liberty or property without due process of law." In common parlance every man must have his "day in court." That means that upon the trial of property rights all claimants to the property shall have notice and an appropriate opportunity to be heard at a trial. Every general depositor is affected by the allowance or rejection of claims. A depositor whose claim has been allowed may have his entire claim wiped out by the allowance of one or more preferred claims, yet no provision whatever is made for such common depositors to make any objection to the allowance of such preferred claim or any practical opportunity to appear at the trial if the claim is disputed. Where is the depositors' "day in court"? Section 6014–132 provides that any dissatisfied creditor shall have notice and 90 days to object but the general creditor as a party in interest has only 30 days to object. Under that section the creditor claiming a preference, if denied, has 90 days to bring suit, but if an interested party wishes to object, he must file his answer within 30 days. There is no provision made to notify the general claimant of the action taken on a claim, and as great secrecy is enjoined, it is quite likely that the general claimant would be wholly ignorant of the status of this preferred claim. Nothing in the record shows that any of the general claimants herein knew anything about the controversy—at least none appeared. As the allowance of the

$25,000 preferred claim would reduce each general claim a very considerable amount, it is safe to conclude that the status of the Clark claim was not generally known to the depositors. The Bank Act in general attempted to close and liquidate state banks without judicial procedure. It is an attempt to follow the procedure in the management by the government of the national banks. It must be remembered that the theory of national banks is that such banks are part of the fiscal department of the nation and therefore subject to the administration of the United States without resort to the courts. The theory is very technical—so technical that I differ with the fiction, as have many others, including Andrew Jackson. But that is all the good it does.

"It is true that ordinary defects in parties, unless raised by demurrer or answer, are waived, to which there is one exception, namely, if the controversy cannot be completely determined in the absence of persons not made parties and the rights of such persons will be prejudiced by a judgment rendered in their absence. (Pomeroy's Code Remedies, 5th ed., sec. 1888, p. 307; *Mitau* v. *Roddan*, 149 Cal. 1, 84 Pac. 145, 6 L. R. A. (n. s.) 275.)

"Section 9090, Revised Codes 1921, provides in part: 'But when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in.' If the necessary parties to a full determination of the controversy are not before the court, it is the duty of the court on its own motion to order them brought in, and this although the defendant in the action may have omitted to raise the objection of defect of parties by demurrer or answer. (*Mitau* v. *Roddan*, supra; *Winter* v. *McMillan*, 87 Cal. 256, 25 Pac. 407, 22 Am. St. Rep. 243; *Wheeler* v. *Lack*, 37 Or. 238, 61 Pac. 849.) The failure of the trial court so to bring in the necessary parties is fatal to the judgment. (*Mitau* v. *Roddan*, supra; *Winter* v. *McMillan*, supra; Pomeroy's Code Remedies, 4th ed., 316.)

"In order for the trial court completely to determine the rights of the plaintiff under the mortgage, as against the other owners of the notes secured by the same mortgage, it was necessary that such owners be before the court, so that the proceeds of the property, when sold, should be properly applied in payment of the various notes according to the equities of the respective owners. It appeared from the testimony on the trial of the case that plaintiff knew nothing about who might be the owners of these notes other than his own.

"The trial court did not commit error in refusing to permit plaintiff to maintain the action in so far as the foreclosure of his mortgage is concerned, but when it appeared from either pleading or proof that other parties were necessary to the complete determination of the controversy, the court should have ordered such additional parties to be brought in—on its own motion, if necessary—and should not have proceeded to a dismissal of the case until a reasonable opportunity had been afforded plaintiff to accomplish that purpose, and if plaintiff failed or neglected to bring in such parties within a reasonable time, then a dismissal would have been proper." (*McKenzie* v. *Evans,* 96 Mont. 1, 10, 29 Pac. (2d) 657, 661.)

"No rule of construction can justify the disregard of the plain mandate of the law. 'In the construction of a statute the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. (Section 10519, R. C. 1921.)' (*Chmielewska* v. *Butte & Superior Min. Co.* [81 Mont. 36, 261 Pac. 616], above.) If a more liberal rule as to relief from failure to file the written notice 'signed by the person injured or someone in his behalf' is desired, appeal must be made to the Legislature, as this court cannot invade the province of that body." (*Maki* v. *Anaconda Copper Min. Co.,* 87 Mont. 314, 287 Pac. 170, 173.)

"Our duty is not to enact, but to expound, the law, not to legislate, but to construe legislation; to apply the law as we find it, to maintain its integrity as it has been written by a

co-ordinate branch of the state government. (*Cooke* v. *Holland Furnace Co.*, 200 Mich. 192, 166 N. W. 1013, L. R. A. 1918E, 552.) When the terms of a statute are plain, unambiguous, direct, and certain, the statute speaks for itself; there is naught for the court to construe. So it is here; the statute says plainly and unequivocally that in case of personal injury or death all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within 6 months from the happening of the accident. As plaintiff's claim was not filed within the period prescribed by the statute, she cannot recover. The statute is mandatory, and a compliance with its requirements is indispensable to the existence of the right to maintain proceedings to compel the payment of compensation. (*Georgia Casualty Co.* v. *Ward,* (Tex. Civ. App.) 259 S. W. 1103; *Inland Rubber Co.* v. *Industrial Commission,* 309 Ill. 43, 140 N. E. 26 [28]; *Northwestern Malt & Grain Co.* v. *Industrial Commission,* 313 Ill. 534, 145 N. E. 89; *Poccardi* v. *Ott,* 83 W. Va. 166, 98 S. E. 69; *Cooke* v. *Holland Furnace Co.,* supra; *Rubin* v. *Fisher Body Corporation,* 205 Mich. 605, 172 N. W. 534; *Dochoff* v. *Globe Construction Co.,* 212 Mich. 166, 180 N. W. 414.)'' (*Chmielewska* v. *Butte & Superior Min. Co.,* 81 Mont. 36, 261 Pac. 616, 617.)

''Beebee is the holder of the legal title to the land. He is not a party to this proceeding; but, if his certificate should be canceled, his interest would be adversely affected. It is elementary that he cannot be deprived of his property without a hearing—without his day in court. He is not only a necessary, but an indispensable, party to any proceeding which seeks the cancellation of his certificate. (*Wright* v. *Commissioners of Gallatin Co.,* 6 Mont. 29, 9 Pac. 543; *Stethem* v. *Skinner,* 11 Idaho, 374, 82 Pac. 451; *State* v. *State Board,* 7 Wyo. 478, 53 Pac. 292; 26 Cyc. 415, 416.)'' (*State ex rel. Gibson* v. *Stewart,* 50 Mont. 404, 147 Pac. 276, 277.)

''The general rule is that a defendant must take advantage of the defect of the parties by demurrer or answer, and, if the objection is not thus raised, it is waived. (*Fitzgerald* v. *Burke,*

408

14 Colo. 559, 23 Pac. 993.) This rule, however, does not apply to an indispensable party, and where the court may not proceed to a decree or judgment without his presence. (*Homestead Min. Co.* v. *Reynolds,* 30 Colo. 330, 70 Pac. 422; *Allen* v. *Tritch,* 5 Colo. 222; *Colorado State Bank of Durango* v. *Davidson,* 7 Colo. App. 91, 42 Pac. 687.)'' (*Peck* v. *Peck,* 33 Colo. 421, 425, 80 Pac. 1063, 1064.)

''Nor is there any force in the further claim that the objection that Mebius & Drescher were not made parties was waived because not raised by demurrer or answer. It is provided by section 389, Code of Civ. Proc., that: 'When a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in.' This provision of the statute is mandatory. * * * It was the imperative judicial duty of the court to order them brought in, notwithstanding no objection to their absence had been raised by demurrer or answer. It was not a matter of discretion but of duty for the court, even upon its own motion, to require their presence.'' (*Mitau* v. *Roddan,* 149 Cal. 1, 9, 84 Pac. 145, 147, 6 L. R. A. (n. s.) 275.)

''It is the established doctrine of equity that when a person claims an estate, either under a will or a deed by which successive estates or interests have been created, all the other persons claiming under the same will or deed, down to the one who is entitled to the first vested estate of inheritance, must be joined in the action as parties, either as co-plaintiffs or as defendants.'' (Pomeroy's Code Remedies, 5th ed., p. 280.)

If the Bank Act is to be held constitutional, there is an objection to the time of the filing of the suit that must make it impossible to amend the complaint and stay in court. The Bank Act requires a suit to protect the rejected preferences to be commenced in time. Clark did not commence the suit at all. Conley and Larabie filed the suit about 90 days after the rejection of Clark's claim. If the plaintiffs should claim that they filed the suit ''as interested parties,'' they would come under the rule requiring a suit to be filed within 30 days and would

therefore be too late. The $25,000 was not to go to Conley and Larabie under any circumstances. They were to get the interest only so long as the band continued, a..d when they discontinued the band the $25,000 was to go to Clark. He was the creditor that filed the claim and the *only* person that could do so. It is doubtful whether Conley and Larabie could even be joined as plaintiffs, but Clark was in any event an indispensable party plaintiff. As before stated with citations of authority, Johnson was not a proper party defendant. The suit should have been entitled *Clark* v. *Larabie Brothers Bankers, Incorporated.* All of the other claimants should have been made parties along with the bank as all had an interest in the result of the action. (The general statutes of Montana, section 9090, heretofore cited.) The general creditors, as the case stands, would not be bound by the judgment; but if the superintendent of banks disburses this fund, what remedy will they have? It can under general statutes still intervene before this judgment becomes final. The situation in the present case is well illustrated by the story of the man in jail who sent for the lawyer to get him out. The lawyer told him they could not put him in jail for the alleged crime. The man in jail said: "Maybe they can't, but I'm in here, and I sent for you to get me out and it does no good for you to tell me that they can't put me in here." If the superintendent pays out the money to Clark, the creditors will have to whistle for their money. The superintendent is just as alleged, "a party without interest," and he and his attorneys have no authority except to file his (the superintendent's) reason for holding it was not a preferred claim. We then have a lawsuit where both parties plaintiff and defendant have no authority in the case and the attempted trial was a futility as no suit was brought in time by the only party who could have done so by law. The statute apparently presumes the superintendent to be merely a disinterested party in the proceeding as he says in the pleading designated as the answer. Brown and Ketter as his attorneys could not very well act as attorneys for the bank or the creditors; therefore if further proceedings follow

in this action, other attorneys should appear for the additional defendants. The suit should be dismissed for lack of necessary parties, both plaintiff and defendant, and it is too late for any interested parties to come in now either as plaintiffs or defendants, except that the depositors still have the right to file as interveners in this suit for the sole purpose of having it dismissed. The $25,000 was not a special deposit and not entitled to a preference.